FILED

04/25/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0429

DA 20-0429

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 81

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

MATTHEW LYMAN TIPPETS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 17-1119
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Billings, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Ingrid Rosenquist, Deputy County Attorney, Billings, Montana

                  Submitted on Briefs:  March 30, 2022

                          Decided:  April 25, 2022

Filed:

_____
               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellant Matthew Lyman Tippets (Tippets) pleaded guilty in the Thirteenth Judicial District Court, Yellowstone County, to the felony charge of Criminal Endangerment. On appeal, Tippets challenges the District Court's July 2, 2020 Order of Revocation and Imposition of Sentence (July 2020 Order), which revoked Tippets's previous suspended sentence and imposed a sentence to the Department of Public Health and Human Services (DPHHS) of two years, two months, and 21 days, with 138 days of time served credit. The District Court denied Tippets's request for time served credit for the 60 days he spent at the Sanction, Treatment, Assessment, Revocation, and Transition (START) facility in late 2019. Tippets's appeal presents two issues for review:

1. *Is Tippets's argument that the District Court lacked the "statutory authority" to revoke his suspended sentence under § 46-18-203(8), MCA, preserved for appeal?*

2. *Is Tippets entitled to credit for time served under § 46-18-203(7)(b), MCA, for the 60 days he spent at the START facility from October 11, 2019 through December 10, 2019?*

¶2 We affirm in part and reverse in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On September 14, 2017, police officers in Billings, Montana, responded to complaints from multiple witnesses that Tippets had been urinating and masturbating with his genitalia exposed in the middle of a public park. The State initially charged Tippets with felony Indecent Exposure. On September 27, 2018, staff psychologists at the Montana State Hospital confirmed Tippets's diagnosis of Schizoaffective Disorder and stated that Tippets suffered from substance abuse issues; however, they ultimately deemed

2

Tippets fit to stand trial. Tippets pleaded guilty to the State's amended charge of felony Criminal Endangerment under § 45-5-207, MCA. On June 12, 2019, the District Court imposed a five-year suspended sentence to DPHHS and placed Tippets on probation with the Department of Corrections (DOC).

¶4 Probation and Parole Officer Breanne Lewis (Officer Lewis) was assigned to supervise Tippets. Between May 2019 and December 2019, Tippets committed several probation violations, resulting in thirteen separate "case management responses."[1] Tippets's violations included missed meetings for his drug relapse prevention group, five separate instances where Tippets admitted to using methamphetamine, and several other failures to follow treatment instructions for his drug rehabilitation. Tippets also tested positive for methamphetamine on multiple occasions.

¶5 On October 11, 2019, an intervention hearing was held due to Tippets's continued failure to comply with his conditions of probation. At this hearing, Tippets was sanctioned to 60 days in the "Mental Health Unit" at the START facility in Anaconda "to help address [Tippets's] mental health concerns." Tippets was taken into DOC custody on the same day. For the four-day period from October 11 through 15, 2020, Tippets was placed in jail to await transport to the START facility and was eventually transported to the START facility on October 15, 2020, where he served the remaining 56 days of his sanction. Tippets was released from START on December 10, 2019.

---

[1] A "case management response" is an action which may be filed in response to a probationer's violation of the terms of probation. The DOC is authorized to apply appropriate incentives or interventions to address the probationer's reported behavior.

¶6     On the same day as his release from START, Tippets reported to Officer Lewis that he had "used methamphetamine upon his release from the [START] transport van." Tippets also tested positive for methamphetamine on this day.  In response, Officer Lewis sanctioned Tippets to 60 days of enhanced supervision and increased weekly contact.  On January 7, 2020, Tippets reported to Officer Lewis that he had consumed alcohol.  Tippets also failed to report for his mandatory weekly check-ins on January 14 and 28, 2020, prompting Officer Lewis to file a formal "Report of Violation" on January 31, 2020. Officer Lewis's Report summarized Tippets's numerous probation violations, remarked that Tippets's "adjustment to supervision has been extremely poor," and noted Tippets's therapist's view that Tippets was largely "unwilling to address his mental health symptoms[.]"   The Report also provided Officer Lewis's view that the Montana Incentives/Interventions Grid (MIIG) could "not be utilized any further and is to be considered exhausted."

¶7     The State filed a Petition for Revocation, and the District Court held an evidentiary hearing on March 18, 2020.  At this hearing, the court orally remarked that Tippets had "violated [the] conditions of his sentence," held that Tippets's violations were "substantial," and ordered a Probation Disposition hearing to be held at a later date.  The court further remarked that Tippets's unaddressed mental health issues were likely the root cause of his lack of progress in addressing his substance abuse issues.

¶8     Tippets's Probation Disposition hearing was held on June 22, 2020.  Tippets made several comments about the federal government conspiring against him, thus underscoring Tippets's unaddressed mental health issues.  At the close of the hearing, the District Court

4

revoked Tippets's suspended sentence and imposed a new sentence to DPHHS. The court confirmed Tippets's new sentence in its July 2020 Order; however, the Order denied Tippets's request that he be credited for the 60-day period that he served as a sanction at the START facility. The court determined that Tippets was not entitled to receive credit because Tippets was "not incarcerated pursuant to § 46-18-203(7)(b), MCA."

**STANDARDS OF REVIEW**

¶9 When the issue presented is whether the district court had authority to take a specific action, the question is one of law and our review is de novo. *State v. Graves*, 2015 MT 262, ¶ 12, 381 Mont. 37, 355 P.3d 769 (citation omitted). On appeal, we generally refuse to review an issue to which the party failed to object at the trial court level, unless a criminal sentence "is alleged to be illegal or in excess of statutory mandates." *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892 (citing *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). In our discretion, we may also invoke plain error review to "review an unpreserved objection if it implicates a fundamental constitutional right and plain error review is necessary to avoid a manifest miscarriage of justice, leaving an unsettled question regarding the fundamental fairness of the proceeding, or otherwise compromising the integrity of the judicial process." *State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72 (citations omitted).

¶10 "Calculating credit for time served is not a discretionary act, but a legal mandate." *State v. Parks*, 2019 MT 252, ¶ 9, 397 Mont. 408, 450 P.3d 889 (quoting *State v. Hornstein*, 2010 MT 75, ¶ 12, 356 Mont. 14, 229 P.3d 1206). As such, a lower court's determination

5

of credit for time served is reviewed for legality and we exercise de novo review. *Parks*, ¶ 7 (citations omitted).

## DISCUSSION

¶11 *1. Is Tippets's argument that the District Court lacked the "statutory authority" to revoke his suspended sentence under § 46-18-203(8), MCA, preserved for appeal?*

¶12 Tippets argues the District Court failed to follow § 46-18-203(8), MCA, which sets forth a statutory procedure for revoking a suspended sentence in response to one or more probation "compliance violation[s]." However, the record is clear that Tippets failed to raise any objection on this ground before the District Court.[2] Although this Court does not ordinarily review allegations that are not properly preserved for appeal, our decision in *Lenihan* provides an exception which allows for appellate review of a criminal sentence that is alleged to be "illegal or in excess of statutory mandates, even if the defendant raised no objection in the trial court." *Kotwicki*, ¶ 8 (citing *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000). However, "a sentencing court's failure to abide [only] by a statutory requirement [constitutes] an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception." *Kotwicki*, ¶ 13 (citations omitted). Thus, our ability to review Tippets's unpreserved allegation under *Lenihan* hinges on whether Tippets's allegations of the court's noncompliance with § 46-18-203(8), MCA, if true, would result

---

[2] At no point during the lower court's proceedings did Tippets argue that the court's findings and process for revoking his suspended sentence did not meet the statutory criteria set forth in § 46-18-203(8), MCA. Instead, when the court asked Tippets's counsel if there were "any other issues to address," Tippets's counsel replied "No, your Honor."

6

in an "illegal sentence" or merely an "objectionable sentence." *Kotwicki*, ¶ 13 (citations omitted).

¶13    In 2017, the Montana Legislature amended § 46-18-203, MCA, and, in so doing, established "compliance violations" and "non-compliance violations."[3] *See also State v. Oropeza*, 2020 MT 16, ¶¶ 4-7, 398 Mont. 379, 456 P.3d 1023 (discussing the changes implemented by the 2017 Legislature).    When a probationer has committed a non-compliance violation, § 46-18-203(7)(a)(iii), MCA, grants a judge the authority to "revoke the suspension of [a] sentence and require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence[.]" Conversely, a judge is required to follow particular provisions of the MIIG for compliance violations. *See* § 46-18-203(8), MCA. Tippets's argument on appeal rests on his assertion that the District Court did not follow the statutory procedure for compliance violations provided by § 46-18-203(8), MCA.

---

[3] Specifically, under § 46-18-203(11)(b)(i)-(v), MCA, "compliance violations" include all violations of parole conditions that are not:

(i) a new criminal offense;
(ii) possession of a firearm in violation of a condition of probation;
(iii) behavior by the offender or any person acting at the offender's direction that could be considered stalking, harassing, or threatening the victim of the offense or a member of the victim's immediate family or support network;
(iv) absconding; or
(v) failure to enroll in or complete a required sex offender treatment program or a treatment program designed to treat violent offenders.

Under this statutory language, both the State and Tippets agree that Tippets's parole violations are correctly categorized as "compliance violations."

7

¶14    Importantly, this Court stated in *Kotwicki*, ¶ 13, that "a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception."  Upon revocation of a suspended sentence, § 46-18-203(7)(a)(iii), MCA, mandates that a lower court "may . . . require the offender to serve either the sentence imposed or any sentence that could have been imposed [and] that does not include a longer imprisonment or commitment term than the original sentence."  Here, the District Court's sentence was well within the ten-year statutory maximum that "could have been imposed" for the crime of Criminal Endangerment. Section 45-5-207(3), MCA (specifying the ten-year maximum sentence for Criminal Endangerment).  Second, the length of Tippets's new sentence was for less time than Tippets's original suspended sentence length of five years.  Thus, pursuant to the District Court's sentencing authority under § 46-18-203(7)(a)(iii), MCA, Tippets's sentence is not an "illegal sentence," but instead the alleged error is an "objectionable sentence" which was not preserved.  We will not review Tippets's allegation of error under *Lenihan*.[4]

¶15    *2. Is Tippets entitled to credit for time served under § 46-18-203(7)(b), MCA, for the 60 days he spent at the START facility from October 11, 2019 through December 10, 2019?*

¶16    The START facility in Anaconda is operated by the non-profit Community, Counseling, and Correctional Services, Inc. (CCCS), and facility operations are supervised by the DOC.  CCCS's contract with the State permits the DOC to commit probationers to

---

[4] Tippets also does not ask this Court to conduct plain error review.

8

the facility for multi-month periods of time when an offender's community placement is revoked or, as in Tippets's case, as a probation sanction. The START facility is similar to a detention facility, as the building is secured by a heavy security presence, is subject to "lockdown[s]," and inmates are confined to "cells" and "pods." The START facility also offers a smaller, specialized "Mental Health Unit" for "offenders with specialized mental health needs." START inmates are "confined to the facility" and offenders "typically require direct staff supervision and full restraints" outside the facility. Lastly, inmate disciplinary reports from START utilize violation codes that are adopted directly from the Montana State Prison disciplinary policy.[5]

¶17　On October 11, 2020, Tippets was sanctioned by the DOC to 60 days in the START Mental Health Unit. Tippets spent four of these 60 days in jail awaiting transport to START and was then confined within the START Mental Health Unit for another 56 days. The State concedes that the District Court erred by failing to grant Tippets credit for the four days he spent in jail awaiting transportation to START; however, the State argues Tippets should not receive credit for the additional 56 days of time he spent at START because START allegedly does not meet the definition of a "detention center" under § 46-18-203(7)(b), MCA.

¶18　Section 46-18-203(7)(b), MCA, provides that, upon revoking a criminal defendant's suspended sentence and imposing a new sentence, "[c]redit must be allowed for time served in a detention center or for home arrest time already served." In the time since the

---

[5] Community, Counseling, and Correctional Services, Inc., *START Program Summary* (2012), https://perma.cc/LDX2-FTF7.

9

2017 Legislature's revisions to § 46-18-203, MCA, this Court has had no occasion to address whether a defendant's time spent at the START facility constitutes "time served in a detention center" for purposes of § 46-18-203(7)(b), MCA.

¶19 The term "detention center" is not defined in Title 46 despite its appearance in § 46-18-203(7)(b), MCA. Nevertheless, the term "detention center" is expressly defined by § 7-32-2241(1), MCA. Under § 1-2-107, MCA, "[w]henever the meaning of a word or phrase is defined in any part of th[e] code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." Accordingly, we may apply the definition of "detention center" in § 7-32-2241(1), MCA, to § 46-18-203(7)(b), MCA. Section 7-32-2241(1), MCA, defines "detention center" as "a facility established and maintained by an appropriate entity for the purpose of confining arrested persons or persons sentenced to the detention center." We have little difficulty in concluding that the START facility is a "detention center" under the plain meaning of § 7-32-2241(1), MCA. First, the facility is "established and maintained by an appropriate entity" which has lawfully contracted with the DOC to confine probationers referred to the facility by probation officers of the DOC. Second, "the purpose" of the START facility is to confine probationers like Tippets to a secured facility as a result of sanctions imposed by the DOC. Although the purpose for confinement at START may be rehabilitation, rehabilitation is one consideration and purpose for any criminal sanction and resulting confinement. Section 46-18-101(2)(d), MCA. Inmates at START are not free to leave the facility until they have served their sanction period. START implements a strict security protocol, confines probationers by requiring "direct staff supervision and full restraints"

10

when not on START's premises, and conducts daily evening lockdowns where inmates are confined to "cells" for sleeping.

## CONCLUSION

¶20 Tippets received a legal sentence. These proceedings are remanded for Tippets to receive credit for time served in the amount of 60 additional days for his time served at START.

¶21 Affirmed in part, reversed in part.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR