FILED

11/01/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0051

DA 22-0051

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 216

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

VERNON A. JOHNSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-0808
Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

      Scott Twito, Yellowstone County Attorney, Holley Metzger, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  August 10, 2022

Decided:  November 1, 2022

Filed:

_____
                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This is an appeal from a Thirteenth Judicial District Court judgment revoking Vernon Johnson's suspended sentence and imposing a sentence with a termination date beyond the original sentence.

¶2     We restate the issues on appeal as follows:

*Issue One: Does § 46-18-203(7)(a)(iii), MCA, prevent a sentencing judge in a revocation proceeding from imposing a longer term of commitment than the original sentence?*

*Issue Two: Does the record support the District Court's denial of credit for elapsed time following Johnson's revocation?*

¶3     We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On August 17, 2017, the Thirteenth Judicial District Court sentenced Vernon Johnson (Johnson) to the Department of Corrections (DOC) for five years, all suspended with credit for one day served, following his plea to two counts of felony indecent exposure. Each count was concurrent with the other. The written judgment included conditions that Johnson enter and successfully complete sexual offender treatment with a clinical provider who is a member in good standing with the Montana Sexual Offender Treatment Association (MSOTA) or its equivalent, subject to the approval of his probation officer, and that Johnson refrain from electronically accessing pornographic materials.

¶5     On January 9, 2020, Johnson admitted to accessing pornography in violation of his sentencing conditions. During a subsequent case management response, Johnson agreed to not possess a phone capable of accessing the Internet without the approval of his

2

treatment provider. Less than a month later, on January 27, 2020, an intervention hearing occurred in light of Johnson acquiring such a phone without the requisite approval. This hearing concluded with Johnson agreeing to several additional conditions, including monitoring of any approved Internet-capable phone and Johnson completing a twenty-day period of continuous supervision at the Alpha House.

¶6 On March 25, 2021, Johnson was questioned about searches for adult dating sites on his phone. On June 20, 2021, Johnson's MSOTA provider and probation officer held a meeting with Johnson about his engagement in the counseling process. On August 16, 2021, Johnson's MSOTA provider terminated him from her program due to his use of the Internet for unauthorized purposes, among other reasons. Johnson alleges that he attempted to establish a relationship with a MSOTA-certified counselor after this termination. His efforts, acknowledged later in testimony from his probation officer, were not successful.

¶7 Johnson's efforts were questionable and indicative of persistent noncompliance with the condition that he receive treatment. One treatment provider who denied Johnson's application for treatment explained that they had "worked with Mr. Johnson in the past and he didn't complete treatment." They detailed that Johnson's alleged efforts to receive treatment instead came across as a means to try "to get out from under what was appropriate accountability within treatment[.]" The provider specified that Johnson could have obtained treatment at a MSOTA provider had he been willing to do so under an increased level of custody, such as wearing a house arrest monitor. Relatedly, with respect to the

completion of a period of continuous supervision at Alpha House, the record contains no evidence of any effort by Johnson to comply with that condition.

¶8     In response to Johnson's termination from the MSOTA program on August 16, 2021, the State filed a petition to revoke his sentence on September 8, 2021.  Prior to a hearing on that petition, Johnson admitted that he violated certain terms and conditions of his probation.  In the subsequent disposition hearing, Johnson additionally admitted to not having completed the twenty-day incarceration sanction at the Alpha House.  Johnson's probation officer recommended that the court credit Johnson 875 days of elapsed time (accounting for the time he was sentenced on August 17, 2017, to the start of Johnson's reported violations on January 9, 2020) and resentence him to two years, seven months, and seven days with the DOC, a sentence that would expire in August 2024—two years later than the potential expiration of the original sentence.

¶9     The District Court followed the officer's recommendation by imposing a suspended sentence of two years, seven months, and seven days in an Order of Revocation and Imposition of Sentence entered on January 24, 2022.  In adopting the officer's recommendation of 875 days of credit for elapsed time, the court stated that it denied additional credit because of Johnson's failure to comply with the terms and conditions of the original sentence.

¶10    Johnson objected that the District Court could not follow the officer's recommendations because the newly-imposed sentence would conclude after his original sentence would have ended.

4

¶11     In the alternative, Johnson argues that the District Court wrongly denied him credit for elapsed time between January 9, 2020, and August 17, 2021.  Johnson alleges that the court lacked sufficient evidence of "a continuing violation of conditions" to deny credit for that period.  He points out that no testimony related to the denial for credit of elapsed time spanning from January 9, 2020 (the date Johnson first admitted to a violation) through August 17, 2021 (the date after the MSOTA program terminated Johnson) occurred during the revocation hearing.  He additionally argues that the court's "naked recital" explaining its denial for credit for that period did not contain sufficient facts or findings.

**STANDARD OF REVIEW**

¶12     This Court applies an abuse of discretion standard when reviewing a district court's decision to revoke a suspended sentence.  *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108.  Only where a criminal sentence is alleged to be illegal or in excess of statutory mandates will this Court review an issue on appeal.  So long as a sentence falls within the statutory parameters the sentence will be regarded as legal.  *State v. Kotwicki*, 2007 MT 17, ¶ 5, 335 Mont. 344, 151 P.3d 892.

¶13     An appellate court reviews an issue of statutory interpretation as a question of law to determine whether a district court's interpretation is correct.  A judge's role in statutory interpretation is to ascertain and declare what is in terms or substance contained therein, not to insert what is omitted or to omit what has been inserted.  Section 1-2-101, MCA.  A court's function is to determine legislative intent, and where that can be determined from the plain meaning of the words used, the plain meaning controls and the court need not go

5

further or apply other means of interpretation. *State v. Pennington,* 2022 MT 180, ¶ 17, 410 Mont. 104, 517 P.3d 894.

¶14 Calculating credit for time served is not a discretionary act, but a legal mandate. *State v. Tippets,* 2022 MT 81, ¶ 10, 408 Mont. 249, 509 P.3d 1 (citation omitted). As such, a lower court's determination of credit for time served is reviewed for legality and we exercise de novo review. *Tippets*, ¶ 10 (citation omitted).

## DISCUSSION

¶15 *Issue One: Does § 46-18-203(7)(a)(iii), MCA, prevent a sentencing judge in a revocation proceeding from imposing a longer term of commitment than the original sentence?*

¶16 Johnson interprets the end date of an original sentence as immovable, even upon the revocation of that original sentence and imposition of a new sentence at a revocation hearing pursuant to § 46-18-203(7)(a)(iii), MCA. Under Johnson's interpretation, following the revocation, the sentencing judge could not legally impose any sentence with an end date later than August 15, 2022, the date on which his original five-year sentence was scheduled to conclude.[1]

¶17 Johnson's interpretation creates a legal barrier that does not exist. Offenders must comply with the conditions of probation for the duration of their suspended sentence and, upon revocation of that sentence, the district court may require the offender to serve the

---

[1] Johnson was originally sentenced to a five-year term. Upon revoking Johnson's suspended sentence, the District Court imposed a new sentence (two years, seven months, and seven days) that did not exceed the length of that original sentence (five years, concurrent) nor impose any longer imprisonment than what could have been originally imposed.

6

entirety of the original sentence. *See State v. Oppelt*, 184 Mont. 48, 51, 601 P.2d 394, 396 (1979).

¶18     In *Oppelt*, the defendant challenged the revocation of his suspended sentence on the basis that doing so would subject him to double jeopardy by enhancing his punishment. *Oppelt*, 184 Mont. at 51, 601 P.2d at 396.  The text of the applicable statute in that case, § 46-18-201(2), MCA (1979), provided that "[i]f any restrictions [imposed by a suspended sentence were] violated, any elapsed time, except jail time, shall not be a credit against the sentence unless the court orders otherwise."  We interpreted that to mean that the revocation of a suspended sentence "leaves the defendant subject to execution of the original sentence, as though it had never been suspended."  *Oppelt*, 184 Mont. at 52, 601 P.2d at 397 (citations omitted).  The Court authorized the imposition of the entire original sentence upon revocation of his suspended sentence.  *Oppelt*, 184 Mont. at 51, 601 P.2d at 397.  In *Gonzales v. Mahoney*, 2001 MT 259, 307 Mont. 228, 37 P.3d 653, we reiterated that a "defendant under a suspended sentence lives with the knowledge that a fixed sentence for a definite term hangs over him."  *Gonzales*, ¶ 6.

¶19     Though the statute has changed since *Oppelt,* the rationale in that decision applies because the changes to the law altered provisions not at issue here.  Both cases question the authority to impose the entirety of the original sentence following revocation of a suspended sentence.  Under the applicable provisions of the 1979 version of the Montana Code Annotated as well as the applicable provisions of the 2021 version, sentencing judges have the authority to revoke a suspended sentence and to impose the entirety of the original sentence on an offender.    *Compare* § 46-18-203(7)(a)(iii), MCA (2021), *with*

7

§ 46-18-201(2), MCA (1979). Under § 46-18-203(7)(a)(iii), MCA, following the revocation of a suspended sentence, the sentencing judge may impose "any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence."[2] This additional language makes explicit what we stated in *Oppelt*—that the original sentence may be imposed upon revocation. However, this language does not alter the requirement that the sentencing judge consider credit for elapsed time when setting a revocation sentence for compliance violations. Section 46-18-203(7)(b), MCA.

¶20 *Oppelt* and *Gonzales* are not abnormalities in our jurisprudence. This Court has not strayed from its precedent allowing for the imposition of an original sentence upon the revocation of a suspended sentence. *See State v. Cook*, 2012 MT 34, ¶ 16, 364 Mont. 161, 272 P.3d 50 (reiterating that "[r]evocation subjects the defendant to execution of the original sentence as though he had never been given a suspension of sentence."); *State v. Haagenson*, 2010 MT 95, ¶ 16, 356 Mont. 177, 232 P.3d 367 (following and summarizing precedent that a revocation hearing is an "exercise of the trial court's supervision over the offender during probation, and the consequence of revocation is execution of a penalty previously imposed." (citation and quotation omitted)); *State v. Lange*, 237 Mont. 486, 489, 775 P.2d 213, 215 (1989) (upholding a district court's reimposition of an original

---

[2] The Dissent posits that our interpretation of § 46-18-203(7)(a)(iii), MCA, could allow for sentences, because of sentence revocations, to continue into perpetuity. Dissent, ¶ 35. In fact, the opposite is true. As noted herein, a revocation court is now mandated to credit the defendant for any elapsed time where the defendant was in compliance with the requirements of the original sentence.

sentence two years into an offender's failed attempt to comply with the conditions of a suspended sentence); *State v. LeDeau*, 2009 MT 276, ¶ 17, 352 Mont. 140, 215 P.3d 672 *rev'd on other grounds State v. Stiffarm*, 2011 MT 9, 359 Mont. 116, 250 P.3d 300 (restating the related conclusion that "[d]ouble jeopardy is not applicable to revocation of suspended sentences.")

¶21   Though Johnson regarded this case as presenting a conflict between §§ 46-18-203(7)(a)(iii) and -203(7)(b), MCA, we find that this case can be resolved solely on the application of our prior interpretation of similar law.  What has changed, as we note below, is how the sentencing judge ought to consider and calculate elapsed time upon the revocation of the original sentence and imposition of a new sentence.  These are distinct issues.

¶22   *Issue Two: Does the record support the District Court's denial of credit for elapsed time following Johnson's revocation?*

¶23   Johnson asserts that the District Court failed to comply with the statutory requirement to grant credit for time served to an offender facing the revocation of their original sentence.  According to Johnson, he should have received credit for time served from the date he admitted to a violation of the conditions of his sentence—January 9, 2020—to the date on which he committed another violation—on August 17, 2021.  The District Court instead only granted credit for the 875 days of elapsed time that transpired prior to the State seeking revocation.

¶24   A sentencing judge must consider credit for elapsed time when setting a revocation sentence for compliance violations.  Section 46-18-203(7)(b), MCA; *see Jardee*, ¶ 7

9

(concluding that the 2017 version of the statute eliminated the discretion of district court judges when deciding whether to grant or deny credit for street time). After such consideration, the judge "shall . . . allow all of the elapsed time served without any record or recollection of violations as credit against the sentence." Section 46-18-203(7)(b), MCA. A district court cannot deny credit for elapsed time "unless specific violations during the times in question are demonstrated." *State v. Gudmundsen*, 2022 MT 178, ¶ 14, 410 Mont. 67, 517 P.3d 146.

¶25    Here, Johnson argues that there was no evidence of a continuing violation in the record from January 9, 2020, to August 17, 2021. The record, however, does not align with Johnson's argument. By Johnson's own admission, he was out of compliance during this time period. He was terminated from the treatment program on August 16, 2021, for his noncompliance prior to that date.

¶26    As part of his original sentence, Johnson agreed to comply with all intervention sanctions. Following Johnson's January 9, 2020 admission to violating the terms and conditions of that sentence, an intervention hearing was held and resulted in additional conditions: refraining from possessing an Internet-capable phone without the requisite permission and completing a period of continuous supervision at Alpha House. Johnson's probation officer testified that Johnson never completed that latter condition. Furthermore, the record contains additional evidence of violations, such as a failure to meaningfully participate in his treatment and continued impermissible content searches.

¶27    Recently, in *Gudmundsen*, we determined that a district court's denial of credit for elapsed time based on "repeated violations of terms and conditions" but "without a

10

connection to the claimed period" was insufficient. *Gudmundsen*, ¶ 10. We clarified that a district court cannot deny credit for elapsed time "unless specific violations during the times in question are demonstrated." *Gudmundsen*, ¶ 14.

¶28 In *Pennington*, we determined a sentence was illegal because the sentencing judge denied credit for elapsed time based merely on reviewing the file "numerous times" and concluding "that the sentence imposed was the best sentence for rehabilitation of the defendant." *Pennington*, ¶ 29. We reiterated the requirement that a sentencing judge's order denying credit for elapsed time be based on a specific record or recollection of a violation during the period claimed as elapsed time by the defendant. *Pennington*, ¶ 29.

¶29 Here, the record contains substantial evidence of Johnson's continuous violations during the claimed period.[3] Johnson failed to participate in his treatment program or take the necessary steps to find a replacement MSOTA provider. He also made no demonstrated effort to comply with the Alpha House condition. Johnson's specific and ongoing violations of the conditions imposed on January 9, 2020, serve as a sufficient basis upon which to deny credit for elapsed time beyond the already-awarded 875 days of elapsed time during which there was no documented record of violations.

**CONCLUSION**

¶30 The Thirteenth Judicial District Court judgment did not violate § 46-18-203(7)(a)(iii), MCA, nor § 46-18-203(7)(b), MCA, in sentencing Johnson to a

---

[3] Johnson suggests that the District Court's order was flawed for failure to include more specifics. However, the court noted the record and, in particular, the defendant's admissions and the hearing transcript, which demonstrates that the court was clearly enmeshed in the process.

11

term no greater than his original sentence and in denying credit for elapsed time, respectively.

¶31    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

Justice Laurie McKinnon, dissenting.

¶32    When Johnson was sentenced to a five-year suspended term on August 17, 2017, he had notice he would be under supervision for a fixed term, for a definite period of time—five years. He had the right to expect that the punishment for his crime had an end date. No one argues here that probation is not a form of punishment or supervision. When the Court entered its dispositional Order of Revocation on January 24, 2022, Johnson had approximately seven months remaining on his commitment term. In my view, the amount of time remaining on his commitment term was the time that Johnson could legally be required to serve under § 46-18-203(7)(a)(iii), MCA. The Court's decision extends Johnson's period of supervision, and thus his commitment term, by nearly two years, which exceeds that originally imposed at his initial sentencing for the offense. Montana's correctional and sentencing policy requires that "[s]entencing and punishment . . . be certain, timely, consistent, and understandable." Section 46-18-101(3)(a), MCA. Clearly,

12

this means there must be a deadline after which the suspended sentence is terminated. Otherwise, a person could be under supervision potentially indefinitely by piecemeal revocations and extensions of commitment terms. Under the Court's statutory interpretation of § 46-18-203(7)(a)(iii), MCA, Johnson's original sentence for indecent exposure could last for the remainder of his life.

¶33    The Court relies on *Oppelt*, a decision from 1979, and holds the "rationale in that decision applies because the changes to the law altered provisions not at issue here." Opinion, ¶ 19. However, the issue in *Oppelt* was not whether the sentence imposed upon revocation exceeded the original commitment term. In fact, the term imposed upon revocation is never mentioned in *Oppelt*. Rather, the significance of *Oppelt* was that the Court established a revocation proceeding and subsequent sentencing did not violate a defendant's double jeopardy rights and that the proceeding was not a criminal adjudication. As a springboard to its analysis, the *Oppelt* Court cited *Roberts v. United States*, 320 U.S. 264, 64 S. Ct. 113 (1943), as authority for the proposition that "[t]he revocation of suspension of sentence leaves the defendant subject to execution of the original sentence, as though it had never been suspended." *Oppelt*, 184 Mont. at 52, 601 P.2d at 397. This does not address the issue here: whether, pursuant to § 46-18-203(7)(a)(iii), MCA, a sentence upon revocation may be extended beyond the remaining time of Johnson's original "commitment term." Because *Roberts* did not address the imposition of a sentence that extended supervision beyond the term of the remaining commitment time, this proposition should not undergird the Court's analysis. The Court's precedent following *Oppelt* perpetuates the error by continuing to rely on this singular statement.

13

¶34    The Court's reading of § 46-18-203(7)(a)(iii), MCA, essentially creates a sentence in perpetuity. If there are successive revocations, the original suspended sentence produces a never-ending cycle of suspended sentences and incarceration periods which would clearly exceed or extend past the originally ordered term of commitment. Moreover, the Court's interpretation of § 46-18-203(7)(a)(iii), MCA, gives no effect to the statutory language "commitment term," which must be distinguished from the immediately preceding language, "incarceration," first, because the legislature has chosen two different terms; and second, because the statute employs the disjunctive "or." There is no argument here that a term of probation is not a term of commitment. If a probationer is under court-imposed probation, that probationer may be incarcerated if the conditions of probation are not followed. Probation is a matter of conditional liberty that is not a right or entitlement. However, probation *is* a sentence. The fact that sanctions and incentives may be utilized to avoid a revocation does not authorize a longer sentence when the revocation is finally filed. Probation officers have the discretion to assess, within the context of a commitment term that is expiring, whether to continue to attempt rehabilitation or to file the revocation petition. Undisputedly, probation starts at the time of sentencing and is contemplated by the sentencing judge at the time the original sentence is imposed. The commitment term may include a period of incarceration, but under § 46-18-203(7)(a)(iii), MCA, it cannot *extend* the commitment term—as it would when a sentence imposed upon revocation exceeds the remaining balance of the term. Any other statutory interpretation is at odds with the sentencing policy of this state, the specific provisions of § 46-18-203(7)(a)(iii),

14

MCA, and a defendant's right to have an originally imposed term of commitment respected.

¶35 I understand that consideration of elapsed time may reduce the time imposed upon revocation, thus appearing to effectuate some criminal justice reform by aligning the reimposed sentence more with the commitment term a defendant initially understood he was receiving. I do not think, however, § 46-18-203, MCA, and—more to the point—this Court's interpretation of § 46-18-203, MCA, is consistent with the goals of Montana's sentencing policy nor furthers the ends of criminal justice reform the revisions to § 46-18-203, MCA, sought to achieve. Section 46-18-203(7)(a)(iii), MCA, as interpreted by this Court, remains fundamentally inconsistent with the policy that sentencing be "certain . . . consistent, and understandable." Section 46-18-101(3)(a), MCA. Although the Montana Incentive and Intervention Grid (MIIG) and the concept of elapsed time may appear to be an effort at criminal justice reform, in my opinion it remains contrived and fosters a game of cat-and-mouse, particularly when a defendant nears the end of his commitment term, is revoked, and a sentence is imposed extending his term of supervision. I would reject such benevolent interference, codified by the MIIG and "elapsed time," in favor of a certain, consistent, and understandable commitment term. Further, this Court has been inundated with appeals pertaining to the MIIG and miscalculations of time under § 46-18-203, MCA; petitions for habeas corpus relief alleging illegal sentences due to the litigants' and courts' struggles in understanding the statute's provisions; and *Anders* briefs, many with concessions by the State, that § 46-18-203, MCA, was applied incorrectly for purposes of calculating time and following the MIIG. Not including orders of dismissal

15

pursuant to *Anders*, there have been over seventy cases since 2017 where this Court has addressed alleged errors involving the MIIG and elapsed time. Here, while the Court relies on precedent and the elapsed time provision in § 46-18-203, MCA, to mitigate the impact of sentences in perpetuity, the outcome, attributable to both the legislature and this Court, nonetheless remains a commitment term and supervision by the DOC extending beyond what the initial sentencing judge originally imposed. Certainly, there are 49 other "experiments" and the federal system from which to draw and correct these ills—and it may take several attempts to get it right. But defendants have the right to notice of the term of commitment they will have to serve and to expect the punishment for their crimes has an end date—a deadline after which they will be done with DOC supervision, courts, and the criminal justice system—and a date for which they can strive to move on with their lives.

¶36 I respectfully dissent.

/S/ LAURIE McKINNON