FILED

12/03/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0085

DA 23-0085

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 285N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CRAIG THOMAS HEADDRESS,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-11-489
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

         Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

         Matthew C. Jennings, Interim Missoula County Attorney, Mark
Handelman, Deputy County Attorney, Missoula, Montana

           Submitted on Briefs:  November 20, 2024

                Decided:  December 3, 2024

Filed:

             _____
                        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Craig Thomas Headdress appeals from the Fourth Judicial District Court, Missoula County's October 31, 2022 order revoking his suspended sentence and imposing a sentence of three-year Department of Corrections ("DOC") supervision. We affirm.

¶3 Headdress pled guilty to stalking in 2012, and the District Court sentenced him to a three-year period of DOC commitment, suspended, to run consecutively to a sentence he was already serving. Headdress began serving his suspended sentence on March 20, 2020. The District Court imposed several conditions of supervision as part of Headdress's suspended sentence, including that he was required to "obtain permission from [his probation officer] or the officer's designee before leaving his assigned district," "submit written monthly reports to his supervising officer" unless otherwise directed, and abstain from "using or possessing alcoholic beverages and illegal drugs." Headdress's assigned district was based in Wolf Point.

¶4 When Headdress began serving his suspended sentence on March 20, 2020, he was enrolled in the Enhanced/Transitional Supervision Services ("ETSS") program, managed by Compliance Monitoring Services ("CMS"). ETSS required him to wear a drug monitoring patch, but he failed to wear the patch and did not complete the program. On

April 9, 2020, CMS reported that Headdress had absconded. On May 28, 2020, police in Missoula reported they had contact with Headdress. Bruce Barstad, Headdress's probation officer, had not given him permission to be in Missoula. Barstad instructed Headdress to report to the Missoula Probation and Parole Office on May 29, 2020; Headdress failed to report as instructed. On June 3, 2020, Barstad spoke with Headdress and instructed him to report to Wolf Point Probation and Parole, which Headdress did on June 10, 2020.

¶5 Headdress reentered the ETSS program on June 24, 2020, but on July 8, 2020, he tested positive for methamphetamine, and Barstad found that the ETSS patch had fallen off. On August 22, 2020, CMS once again reported that Headdress had absconded. On August 31, 2020, Barstad spoke with Headdress's brother, who reported that Headdress had assaulted him on August 29, 2020, and attempted to break into his home. For a period of over seven months, from July 8, 2020 to February 12, 2021, Headdress had no contact with Barstad.

¶6 On February 12, 2021, Barstad located Headdress living in his vehicle. Headdress agreed to enter a chemical dependency treatment program, but he continued to test positive for methamphetamine until July 2, 2021, when he left Wolf Point with Barstad's permission to begin treatment at Rimrock Treatment Center ("Rimrock") in Billings. But after leaving Wolf Point specifically to begin treatment, Headdress left a message on Barstad's voicemail on July 15, 2021, stating that he was headed to Ravalli County to find a temporary home for his dog and he would check into Rimrock on July 23, 2021. On July 19, 2021, Headdress called Barstad and told him that he was in Missoula, still looking

for a home for his dog, but that he would leave the following day for Rimrock. On July 27, 2021, Barstad called Headdress, and Headdress said that he was now in Kalispell, still looking for a home for his dog, but that he would check into the Kalispell Hospital Emergency Room after finding a home for his dog. On July 28, 2021, Barstad issued a Pickup and Hold Order based on the uncertainty of Headdress's location.

¶7 On July 29, 2021, Headdress called the Glasgow Probation and Parole office and said that he had made arrangements for his dog and would attend treatment shortly. On August 2, 2021, Barstad made contact with Headdress, and Headdress told him that he was staying with his brother in Missoula, but that he would check into treatment on August 4, 2021. On August 11, 2021, Headdress left a voicemail with Barstad saying that he was checking himself into a hospital for treatment. On August 20, 2021, Missoula Police received a complaint that Headdress had tried to break into his brother's home, but the officers released Headdress after he told them that he was in Missoula to attend treatment. Barstad attempted to call Headdress at least once in December of 2021, but found that Headdress's phone was not active.

¶8 Barstad did not hear from Headdress again until Headdress was arraigned on new assault charges in Missoula on December 22, 2021. On January 4, 2022, the State petitioned to revoke Headdress's suspended sentence and attached a Report of Violation ("ROV") from Barstad detailing the interactions described above. The District Court held an evidentiary hearing on September 30, 2022, at which Barstad testified to his interactions

with Headdress. When asked whether there was "ever given a month long chunk of time where [Headdress] was in compliance," Barstad responded that he believed there was not.

¶9 On October 31, 2022, the District Court held a dispositional hearing, at which it revoked Headdress's suspended sentence and imposed a sentence of three years in the custody of DOC. The District Court based its revocation on a determination that Headdress had absconded between July 2, 2021, and December 22, 2021. At the hearing, Headdress asserted that he was entitled to 630 days of credit for time served based on the time he was under DOC supervision between March 20, 2020, and December 30, 2021, the day that Barstad completed the ROV. The District Court granted Headdress 165 days of time-served credit based on the time he spent incarcerated after his December 19, 2021 arrest but denied credit for "street time" based on "the recollection of the probation officer in the records," which indicated Headdress had been non-compliant since his supervision began.

¶10 We review a district court's decision to revoke a suspended or deferred sentence to determine whether it was supported by a preponderance of the evidence, and, if so, whether the court abused its discretion. *State v. Oropeza*, 2020 MT 16, ¶ 14, 398 Mont. 379, 456 P.3d 1023. Whether a district court correctly calculated credit for time served is a question of legality that we review de novo. *State v. Johnson*, 2022 MT 216, ¶ 14, 410 Mont. 391, 519 P.3d 804.

¶11 Headdress argues that because he called Barstad several times to provide his location, the District Court abused its discretion by revoking his suspended sentence based

on a determination that he had absconded between July 2, 2021, and December 22, 2021.[1] A district court "may not revoke a suspended or deferred sentence for violations of a parole or probation condition unless the violation qualifies as a non-compliance violation or the probation officer has exhausted all responses in" the Montana Incentives and Intervention Grid for Adult Probation and Parole. *Oropeza*, ¶ 17 (citing § 46-18-203(7)-(8), MCA). Absconding is a non-compliance violation defined as "when an offender deliberately makes the offender's whereabouts unknown to a probation and parole officer or fails to report for the purposes of avoiding supervision, and reasonable efforts by the probation and parole officer to locate the offender have been unsuccessful." *Oropeza*, ¶ 17 (quoting § 46-18-203(11)(a), MCA). "If a court finds by a preponderance of the evidence that an offender has committed a non-compliance violation, it may revoke a suspended or deferred sentence and impose any sentence that may have been originally imposed." *Oropeza*, ¶ 17 (citing § 46-18-203(6)(a), (7)(a)(iii), MCA).

¶12 In *Oropeza*, we found that a probationer who made no effort to report to his probation and parole officer for three months when he knew that he was required to do so, met the definition of failing to report for the purposes of avoiding supervision. *Oropeza*, ¶ 18. We also found that the officer's instructions to Oropeza to contact him,

---

[1] Headdress also argues that he was denied due process because the District Court revoked his suspended sentence without giving him an opportunity to attend in-patient drug treatment. Whether Headdress attended treatment does not bear on whether he absconded, so even if the District Court had given him the opportunity to do so, it still would not have abused its discretion when it revoked his suspended sentence for absconding. *See* § 46-18-203(11)(a), MCA (defining absconding). We decline to address Headdress's due process argument because it has no bearing on the validity of his revocation.

visits to Oropeza's residence, and calls to his place of employment and relatives were reasonable efforts to locate him. *Oropeza*, ¶ 19.

¶13 Assuming for the sake of argument that Headdress was not absconding from July 2, 2021, to August 11, 2021, because he called Barstad to let him know where he was, the District Court did not err when it determined that he had absconded between August 11, 2021, and December 22, 2021. During that four-months-plus period, Headdress made no attempts to contact Barstad, and he does not dispute that he was aware he was required to maintain contact with Barstad. The District Court's determination that Headdress failed to report for the purposes of avoiding supervision was supported by a preponderance of the evidence.

¶14 The District Court correctly determined that Barstad made reasonable efforts to locate Headdress. On July 28, 2021, when it became clear that Headdress was regularly changing locations and did not intend to attend treatment at the facility he had been given permission to attend, Barstad issued an order to hold him. Barstad was regularly in contact with Headdress's family and regularly called Headdress himself in an effort to ascertain his location. When Barstad was able to reach Headdress, he instructed him to either check into a treatment facility where he could be easily located or to return to Wolf Point.

¶15 Barstad's recurrent efforts to reach Headdress and Headdress's prolonged failure to initiate or even attempt to initiate contact with Barstad constitute sufficient evidence for the District Court to determine that Headdress absconded within the definition of

§ 46-18-203(11)(a), MCA. The District Court did not abuse its discretion in revoking Headdress's suspended sentence.

¶16 Headdress argues that the District Court erred when it denied him credit for elapsed time from the commencement of his suspended sentence on March 20, 2020, and December 30, 2021, the date on which Barstad requested revocation of his suspended sentence. Following a revocation of a suspended sentence, a district court may impose "any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence," and "the judge shall consider any elapsed time, consult the records and recollection of the probation and parole officer, and allow all of the elapsed time served without any record or recollection of violations as a credit against the sentence." Section 46-18-203(7)(a)(iii), (b).

¶17 Barstad testified, both at the September 30, 2022 hearing and in his ROV, that Headdress was not compliant at any point during his supervision. From March 2020 to August 2020, Headdress failed to report to Barstad and twice failed to complete the ETSS program. From August 2020 to February 2021, Headdress failed to report to Barstad as required. From February 2021 to July 2021, Headdress continually tested positive for methamphetamine. From July 2021 to December 2021, Headdress was either outside of his assigned district without permission and/or was not in contact with Barstad. Headdress's ongoing violations were a sufficient basis for the District Court to deny any elapsed time credit.

8

¶18     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

                                              /S/ JAMES JEREMIAH SHEA


We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE