FILED

03/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0354

DA 23-0354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 58

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

LEROY MICHAEL CHARLES,

      Defendant and Appellant.


APPEAL FROM:   District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause No. DC-17-129
                Honorable Molly Owen, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
          Attorney General, Helena, Montana

          James Lapotka, Lake County Attorney, Lori A. Adams, Deputy
          County Attorney, Polson, Montana


                    Submitted on Briefs:  January 15, 2025

                              Decided:  March 25, 2025

Filed:

                _____
                          Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Leroy Charles (Charles) appeals the May 3, 2023 Judgment issued by the Twentieth Judicial District Court, Lake County, that revoked his suspended sentence and imposed a four-year sentence, all suspended, to the Department of Corrections (DOC). The District Court granted 487 days of credit for street time, but denied Charles's request for additional credit for elapsed time between the filing of the report of violation (ROV) through the May 3, 2023 dispositional hearing. We reverse and remand to the District Court to amend its Judgment in accordance with this opinion.

¶2 We restate the issues on appeal as follows:

*1. Whether the District Court erred when it denied Charles's request for credit for elapsed time.*

*2. Whether the District Court erred in its calculation of credit for street time when it sentenced Charles on the revocation of his suspended sentence.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Charles pled not guilty to aggravated assault, criminal endangerment, and aggravated kidnapping—all arising from separate cases—on May 10, 2017. In accordance with a plea agreement, Charles pled guilty to an amended charge of criminal endangerment on June 28, 2017, in exchange for the State to drop the aggravated assault and aggravated kidnapping charges. The District Court sentenced Charles to eight years with four suspended in DOC on August 23, 2017. The District Court granted Charles 189 days of credit for time already served. Charles began the suspended portion of his sentence on February 14, 2021, and he complied with his supervision requirements for over a year.

2

¶4     However, on October 21, 2022, the DOC filed a ROV that accused Charles of several compliance violations. The ROV detailed how Charles admitted to using methamphetamine on June 6, 2022, and he thereafter tested positive for methamphetamine eight times from June 6, 2022, through October 20, 2022. Charles also failed to report for drug testing 11 times from August 16, 2022, through October 18, 2022. Charles was also found to have created a false Facebook account to send threatening messages. Finally, Charles failed to initiate his chemical dependency and mental health evaluations. The ROV recommended Charles's four-year suspended sentence be revoked and that he be committed to the DOC for four years with none suspended.

¶5     The State filed a petition to revoke Charles's sentence on October 24, 2022. The court issued a warrant for Charles on November 9, 2022. It is not clear from the record whether Charles was arrested or appeared on his own, but it is clear that Charles appeared in court for a hearing on the warrant on November 30, and the District Court appointed a public defender to represent Charles. The District Court released Charles on his own recognizance on the condition that he obtain and pay for drug patch testing through Compliance Monitoring Systems. On December 14, 2022, the court held another hearing where it accepted Charles's general denials to the petition to revoke and amended his release conditions to require routine urinary analysis testing instead of the drug patch.

¶6     On December 19, 2022, the District Court issued an order revoking own recognizance release and issued a warrant for Charles's arrest based on his November 30, 2022 drug patch that tested positive for methamphetamine. Based on the record, it is not

3

clear whether Charles was arrested and served any time incarcerated in connection with this warrant prior to the disposition hearing on May 3, 2023.

¶7      On February 15, 2023, the District Court held a hearing in which Charles admitted to two of the four counts contained in the ROV—testing positive for methamphetamine and failing to appear for his drug tests.

¶8      The District Court held a disposition hearing on the petition to revoke on May 3, 2023.  At the hearing, both the State and Charles agreed on a sentence of four years all suspended, but the parties could not agree on how much credit for street time Charles should have received.  The State argued for 16 months of street credit—the amount recommended by Charles's probation officer who filed the ROV.  However, defense counsel argued for 16 months plus the six months from the time the ROV was filed to the date of the hearing.  Defense counsel argued that time should count toward street credit because since the filing of the ROV, Charles completed outpatient treatment, tested clean on all of his drug tests, and had been working hard to meet probation requirements.

¶9      The District Court sentenced Charles to four years, all suspended and gave him credit for 487 days of street time.  The court noted that it was not including the six months from the filing of the ROV to the date of the hearing because "the credit you're receiving is that you're not going back to the Department of Corrections right now.  You're getting a suspended sentence, so I'm not going to give you additional credit for those six months; I'm going to go along with your probation officer's recommendation."  Charles appeals.

4

**STANDARD OF REVIEW**

¶10   We review the revocation of a suspended sentence for abuse of discretion. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Additionally, revocation decisions involve both legal and factual findings, and we review a district court's legal findings de novo and its factual findings for clear error, thus findings of fact regarding a probationer's credit for elapsed time or time served are reviewed for clear error. *Jardee*, ¶¶ 5, 12. "[W]hen the district court's authority to take a specific action is at issue, the question is one of law and our review is de novo." *State v. Gudmundsen*, 2022 MT 178, ¶ 8, 410 Mont. 67, 517 P.3d 146; *State v. Tippets*, 2022 MT 81, ¶ 9, 408 Mont 249, 509 P.3d 1. Calculating credit for elapsed street time and time served is not a discretionary act, but a legal mandate. *State v. Pennington*, 2022 MT 180, ¶ 18, 410 Mont. 104, 517 P.3d 894; *Gudmundsen*, ¶ 8. As such, a district court's determination of street time or time served credit is reviewed for legality and we exercise de novo review. *Tippets*, ¶ 10. Factual findings "are clearly erroneous if they are not supported by substantial credible evidence, the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite firm conviction that a mistake has been made." *Jardee*, ¶ 5 (quoting *State v. Johnson*, 2018 MT 277, ¶ 10, 393 Mont. 320, 430 P.3d 494). "[T]he interpretation and construction of a statute is a matter of law, and we review whether the district court interpreted and applied a statute correctly de novo." *Jardee*, ¶ 5 (citation omitted).

**DISCUSSION**

¶11    *1. Whether the District Court erred when it denied Charles's request for credit for elapsed time.*

¶12    First, we consider whether Charles should receive credit for elapsed time for the period from October 21, 2022—the date of the ROV—through the date of disposition on May 3, 2023.  Section 46-18-203(7)(b), MCA, states:

> If a suspended or deferred sentence is revoked, the judge shall consider any elapsed time, consult the records and recollection of the probation and parole officer, and allow all of the elapsed time served without any record or recollection of violations as a credit against the sentence. If the judge determines that elapsed time should not be credited, the judge shall state the reasons for the determination in the order. Credit must be allowed for time served in a detention center or for home arrest time already served.

This Court has held the current version of this statute removed the district court's discretion to deny credit for street time served unless there is specific evidence in the record of a violation.  *Jardee*, ¶ 10; *Gudmundsen*, ¶ 12.  Otherwise, "[t]he defendant is statutorily entitled to the credit unless specific violations during the times in question are demonstrated."  *Gudmundsen*, ¶ 14.

¶13    Here, Charles argues he is entitled to elapsed time from the date the ROV was filed on October 21, 2022, through May 3, 2023, when the District Court imposed its sentence.  Charles claims he had no violations during this period and completed treatment.  The State points out that on December 19, 2022, the District Court ordered revocation of release on his own recognizance and issued a warrant for Charles's arrest due to the results of a November 30, 2022 drug patch that tested positive for methamphetamine.

6

¶14 The District Court did not state the specific reasons why it was not granting credit for elapsed time in its Order. However, the court did orally explain its position during the May 3, 2023, hearing. The court stated it was not allowing credit for elapsed time between November 2022 through May 3, 2023, because the credit it was offering was an additional suspended sentence, rather than a DOC sentence. We note that district courts do not have authority to swap credit for a suspended sentence. *See Gudmundsen*, ¶ 14 (stating a court's potential consideration of elapsed time in the court's formulation of the revocation sentence does not eliminate entitlement to the credit).

¶15 In *Gudmundsen*, we found § 46-18-203(7)(b) allows elapsed time credit for periods after or between violations. *See Gudmundsen*, ¶¶ 4-6, 14. The statute allows for elapsed time credit even after the revocation petition is filed. *See Gudmundsen*, ¶¶ 5-6, 14; *see also Jardee*, ¶¶ 7, 10-11. However, this Court has affirmed a district court's denial of elapsed time credit when the probation record contained substantial evidence of specific and ongoing violations during the claimed period. *State v. Johnson*, 2022 MT 216, ¶ 29, 410 Mont. 391, 519 P.3d 804.

¶16 Looking at the period from October 21, 2022, through May 3, 2023, there is only one demonstrable violation in the record. On November 30, 2022, one of Charles's drug patches tested positive for methamphetamine. Since that date, however, the record demonstrates that Charles entered intensive outpatient treatment on November 29, 2022, and maintained his sobriety through May 3, 2023—other than the November 30, 2022 violation. The record contains drug tests showing negative results and a January 31, 2023

7

letter from Cedar Creek treatment facility stating Charles was treatment compliant, attended weekly counseling, remained drug free, and showed remarkable progress throughout this period. As such, we find the District Court erred by not giving Charles credit for this elapsed time during which there were no specific violations. Starting from the date after his last positive drug test on November 30, 2022, through the date of the disposition hearing on May 3, 2023, there were no recorded violations, Charles participated in intensive outpatient treatment, weekly counseling, remained drug free, and demonstrated an ability and willingness to abide by the requirements. Thus, he "is statutorily entitled to the credit" for the elapsed time with no recorded violations from December 1, 2022, through to disposition on May 3, 2023—154 days. *Gudmundsen*, ¶ 14.

¶17 Next, we consider credit for time served while incarcerated at various times from November 9, 2022 through May 3, 2023. Under § 46-18-203(7)(b), MCA, "[c]redit must be allowed for time served in a detention center." In the District Court's May 3, 2023 Judgment, Charles received 189 days credit for time served. Charles was presumably incarcerated after he was arrested for a warrant issued by the District Court on November 9, 2022—but the record is not clear on what date he was arrested. Charles presumably remained incarcerated until November 30, 2022, when the court quashed the warrant and released Charles on his own recognizance. If in fact Charles was incarcerated for any time during this period, the District Court did not give Charles credit for this time served. Charles is entitled to credit for jail time from the date he was arrested on the November 9, 2022 warrant until his own recognizance release on November 30, 2022.

8

¶18     Additionally, on December 19, 2022, the District Court revoked Charles's release on his own recognizance and issued a warrant for his arrest due to the results of a November 30, 2022 drug patch that tested positive for methamphetamine. There is no further reference to this positive drug test in the record, Charles's probation officer did not file another ROV, nor was there any indication the District Court took this incident into consideration after issuing the warrant—rather the District Court continued on, only considering the violations reported in the ROV. From the record we cannot determine what dates Charles spent incarcerated, if any, after December 19, 2022. Charles is entitled to receive credit for any time he was incarcerated after December 19, 2022.

¶19     Thus, we remand for the District Court to amend its sentencing to allow credit for any time that Charles spent incarcerated from November 9, 2022 to November 30, 2022 and from December 19, 2022, through May 3, 2023.

¶20     *2. Whether the District Court erred in its calculation of credit for street time when it sentenced Charles on the revocation of his suspended sentence.*

¶21     Lastly, we consider whether the District Court calculated Charles's street time correctly. There is a gap in the record on appeal from September 5, 2017, through October 21, 2022, which encompasses the date Charles was released from the DOC on the suspended portion of his sentence. The only evidentiary record we have of the official date of release from the DOC is from the transcript of the February 15, 2023 hearing where defense counsel asked Charles "did you begin the four-year suspended portion of your sentence on February 14th, 2021?" To which Charles answered "yes." As such, we start the calculation from February 14, 2021, and add up the days until Charles's first violation

9

on June 6, 2022, for a total of 477 days of street time credit.[1]  The District Court calculated this as 487 days in its Order.

**CONCLUSION**

¶22     Accordingly, we reverse and remand to the District Court to amend its Judgment with correct calculations for elapsed time, time spent incarcerated, and street time credit. First, elapsed time from December 1, 2022, to May 3, 2023—154 days—should be counted, less any days he spent incarcerated during this period, as credit for elapsed time because there are no recorded violations during this time period, and the record shows Charles was actively complying with probation requirements—he maintained his sobriety, completed intensive outpatient treatment, and did not commit any violations during this time.  The District Court does not have the authority to swap statutorily required street time credit for imposition of a suspended sentence rather than a DOC commitment.  Denial of credit for elapsed time must be based on a specific record of a violation during the period claimed as time elapsed by the defendant.  *Pennington*, ¶ 29.  Second, Charles shall be additionally credited with any time he was incarcerated on warrants from November 9,

---

[1] On appeal, Charles argues the calculation of street time should begin on April 19, 2019, for a total of 1,144 days of street time.  We note the only mention of this date in the record is from the November 30, 2022, hearing transcript where the State is quoted as saying "[t]here was a commitment, before suspended, to the [DOC].  It looks like from when he was released April 19th of 2019 to supervision, he did well for one, two, three—almost four years."  However, at the February 15, 2023, hearing, defense counsel acknowledged Charles's suspended portion of sentence began February 14, 2021, and Charles agreed.  Furthermore, at the May 5, 2023, sentencing hearing, defense counsel did not object when the District Court calculated street time beginning on February 14, 2021.  With no other evidence in the record, we take the date Charles agreed to as true.  Thus, we do not consider Charles's argument on appeal that street time should begin on April 19, 2019.

2022, to November 30, 2022, and between December 19, 2022, and May 3, 2023. Finally,

Charles is entitled to street time credit from February 14, 2021, to June 6, 2022.[2]

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER

---

[2] We calculate this at 477 days, rather than the 487 days with which he was originally credited.