FILED

09/20/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0608

DA 20-0608

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 180

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

KAYLA DAWN PENNINGTON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDC-2016-197
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney General, Helena, Montana

          Leo J. Gallagher, Lewis and Clark County Attorney, Katie Jerstad, Deputy County Attorney, Helena, Montana

Submitted on Briefs:  July 27, 2022

Decided:  September 20, 2022

Filed:

_____
              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Kayla Dawn Pennington (Pennington) appeals from a December 3, 2020 District Court order revoking her deferred sentence and imposing a ten-year suspended sentence without any reduction for elapsed time. We restate the issues on appeal as follows:

> *Issue One: Does a district court have the authority to revoke a deferred sentence for a felony offense based on compliance violations and a determination that the offender would not be responsive to additional incentives and interventions under the Montana Incentives and Interventions Grid?*

> *Issue Two: Following revocation of a deferred sentence, is the offender entitled to credit for elapsed time prior to the revocation?*

¶2 We affirm in part and reverse and remand for the limited purpose of amending the sentence to reflect 335 days of credit for elapsed time.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Pennington provided care to Walter Holland. On September 10, 2015, Walter's grandson reported unusual charges and possibly forged checks to the Lewis and Clark County Sheriff's Office. The Deputy assigned to the case concluded that Pennington had written checks to herself from Walter's account without his consent and used his credit card for purchases he did not authorize.

¶4 On May 24, 2016, the State filed an Information charging Pennington with Count I: exploitation of older person, a felony, and Count II: deceptive practices, a felony. Pursuant to a plea agreement, the State dismissed Count II and Pennington pled guilty to an amended Count I, felony theft. On January 4, 2018, the court deferred imposition of sentence for a period of six years to provide her with enough time to pay the $15,385.89 restitution

obligation. The sentence placed Pennington on formal probation and she was required to abide by numerous conditions and requirements.

¶5 On December 4, 2018, Pennington consumed alcohol, a compliance violation, which she admitted to her Probation and Parole Officer, Erica Schell (Schell). On December 23, 2018, Pennington was arrested and cited by Helena Police for Driving While Privilege To Do So Was Suspended or Revoked. On January 3, 2019, Pennington told Schell that she was cited for a DUI.

¶6 On January 8, 2019, Pennington's failure to make restitution payments in November and December 2018 resulted in a probation hearings officer conducting an intervention hearing. The officer imposed additional sanctions.

¶7 On March 12, 2019, Pennington was found guilty of the December 23, 2018 driving without a license charge.

¶8 On June 26, 2019, a police officer witnessed Pennington drinking at a bar. The blood test sample that Pennington completed at the officer's request indicated that she had a blood alcohol content of .112. On June 27, 2019, another intervention hearing was held. Pennington admitted to two violations during that hearing. As sanction for those violations, Pennington was required to serve two days in jail, comply with 30 days of a 24/7 alcohol monitoring program, perform 10 hours of community service in place of a third day in jail, and refrain from traveling for 30 days. On February 9, 2020, Pennington was observed drinking alcohol. Pennington later admitted to drinking on that date as well as to being at a bar on February 8 and 9, 2020.

¶9 On February 10, 2020, a case management response was conducted by Pennington's probation officer. Schell documented the January 8, 2019, June 27, 2019, and February 10, 2020 interventions held in response to separate incidents of probation violations by drinking alcohol. Sanctions designed to address Pennington's individualized needs were imposed. Schell noted that Pennington had twice been placed on the 24/7 Alcohol Monitoring Program within the span of seven months. Despite these interventions, Schell concluded that Pennington persisted in violating her probation by drinking alcohol.

¶10 On April 10, 2020, Pennington was cited for driving under the influence of alcohol—her second offense, failing to carry proof of insurance, habitual offender operation of a motor vehicle, and driving while suspended or revoked.

¶11 Schell filed a formal Report of Violation (ROV). The ROV contained five alleged violations of Pennington's deferred sentence. Furthermore, the ROV asserted that Pennington "is not in compliance with her probation and blatantly disregards the rules of supervision." Pennington's disregard for the rules led Schell to conclude that Pennington was "not capable of being a law-abiding citizen." On April 21, 2020, the State filed a petition to revoke Pennington's deferred sentence based on Schell's ROV. Pennington entered denials of all five alleged violations.

¶12 On June 9, 2020, the State filed Schell's addendum ROV containing two additional counts of alleged violations: the first, arising from Pennington's use of cocaine; the second, arising from Pennington's failure to inform Schell that she had been fired from her job. In that ROV, Schell reported that Pennington had persisted in her "blatant disregard of the

rules of supervision." On August 11, 2020, the State filed Schell's second addendum ROV that contained one additional alleged violation: Pennington's admission to consuming alcohol on August 1, 2020, and noted Schell's opinion that Pennington "does not take conditions of probation supervision along with court orders seriously . . . ." The State concurrently filed an Amended Petition to Revoke Defendant's Deferred Sentence.

¶13 At a hearing on October 27, 2020, the State moved to dismiss the first five counts, arising from Pennington's April 2020 DUI arrest. Pennington admitted to Counts VI through VIII—drug use, alcohol use, and failure to notify over an employment change, which were all compliance violations. The court found that Pennington violated the latter three counts and revoked her previously deferred imposition of sentence.

¶14 On November 12, 2020, the Court held a sentencing hearing. Officer Schell testified that the myriad interventions had not been effective. Schell acknowledged that while all Montana Incentives and Intervention Grid (MIIG) interventions had not been exhausted, it was her opinion that Pennington would not be responsive to further efforts under the MIIG.

¶15 The court sentenced Pennington to the Montana Women's Prison for a period of ten years, all suspended.

### STANDARD OF REVIEW

¶16 This Court applies an abuse of discretion standard when reviewing a district court's decision to revoke a suspended sentence. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Only where a criminal sentence is alleged to be illegal or in excess of statutory mandates will this Court review an issue on appeal. So long as a sentence falls

within the statutory parameters the sentence will be regarded as legal. *State v. Kotwicki*, 2007 MT 17, ¶ 5, 335 Mont. 344, 151 P.3d 982.

¶17 An appellate court reviews an issue of statutory interpretation as a question of law to determine whether a district court's interpretation is correct. A judge's role in statutory interpretation is to ascertain and declare what is in terms or substance contained therein, not to insert what is omitted or to omit what has been inserted. Section 1-2-101, MCA. A court's function is to determine legislative intent, and where that can be determined from the plain meaning of the words used, the plain meaning controls and the court need not go further or apply other means of interpretation.

¶18 Calculating credit for time served is not a discretionary act, but a legal mandate. *State v. Tippets,* 2022 MT 81, ¶ 10, 408 Mont. 249, 509 P.3d 1 (citation omitted). As such, a lower court's determination of credit for time served is reviewed for legality and we exercise de novo review. *Tippets*, ¶ 10 (citation omitted).

## DISCUSSION

¶19 *Issue One: Does a district court have the authority to revoke a deferred sentence for a felony offense based on compliance violations and a determination that the offender would not be responsive to additional incentives and interventions under the Montana Incentives and Interventions Grid?*

¶20 Section 46-23-1028, MCA, requires the Department of Corrections to establish the MIIG to guide responses to behavior by people under Department supervision. *See State v. Oropeza*, 2020 MT 16, ¶ 5, 398 Mont. 379, 456 P.3d 1023. Sections 46-18-203(7) and -203(8), MCA, pertain to violations of suspended or deferred sentences. Subsection (7) applies in the context of violations that are not considered compliance

6

violations. Section 46-18-203(7), MCA. These behaviors involve serious violations of supervision including a new criminal offense, possession of a firearm, harassing a victim or someone close to the victim, absconding, and failure to complete sex offender treatment. *See Tippets*, ¶ 10 n.3 (defining compliance violations under § 46-18-203(11)(b)(i-v), MCA). Notably, upon a finding of a non-compliance violation with respect to a deferred sentence, the sentencing judge may "impose any sentence that may have been originally imposed." Section 46-18-203(7)(a)(iv), MCA.

¶21 Section 46-18-203(8), MCA, applies in the context of compliance violations— failure to follow the terms and conditions of probation. *Tippets*, ¶ 13. Upon a finding of a compliance violation, the sentencing judge generally has two options: "continue the suspended or deferred sentence without a change in conditions; or continue the suspended or deferred sentence with modified or additional terms and conditions[.]" Section 46-8-203(8)(i-ii), MCA. Only upon specific findings may the sentencing judge in a case regarding compliance violations follow § 46-18-203(7)(a)(iv), MCA, and impose any sentence that may have been originally imposed. More specifically, a sentencing judge may only impose such a sentence after finding that the offender "has violated the terms and conditions of the suspended or deferred sentence, that the violation is a compliance violation, and that the offender's conduct indicates that the offender will not be responsive to further efforts under the incentives and interventions grid[.]" Section 46-18-203(8)(c), MCA.[1] Those three factual findings allow the sentencing judge to sentence the offender

---

[1] This Court misstated the law in *Oropeza* when it concluded that revocation of an offender's sentence pursuant to § 46-18-203(8)(c), MCA, requires exhaustion of the MIIG. *Oropeza*, ¶ 6.

7

"as provided in subsection (7)." Section 46-18-203(8)(c), MCA. Thus, if the judge has determined that the offender will not be responsive to further efforts made under the MIIG, § 46-18-203(7)(b), MCA, applies.

¶22 Pennington argues that the sentence was illegal.[2] This argument fails; revocation of a deferred sentence based on a compliance violation does not require a finding that the MIIG has been exhausted. Pennington admitted to three compliance violations of conditions imposed under a deferred sentence, triggering an analysis under § 46-18-203(8), MCA. Pursuant to subsection (8)(c), the sentencing judge could sentence Pennington as provided in subsection (7) upon making the three specific findings discussed above. Section 46-18-203(8)(c), MCA.

¶23 Neither party contests the first two findings—that Pennington violated the conditions of her deferred sentence and that those violations were compliance violations. Pennington erroneously argues that the third finding requires the sentencing judge to

---

That subsection explicitly allows for revocation where the judge finds "that the offender's conduct indicates that the offender will not be responsive to further efforts under" the MIIG. Section 46-18-203(8)(c), MCA. If a judge finds that exhaustion of the MIIG occurred, then the finding required by that subsection would obviously be met; however, only a finding that the offender will not be responsive to further efforts—rather than exhaustion—is required. Section 46-18-203(8)(c), MCA. Notably, we concluded *Oropeza* on other grounds, so this decision clarifies the misstatement in that Opinion. *Oropeza*, ¶ 21.

Similarly, in *City of Missoula v. Sadiku*, 2021 MT 295, 406 Mont. 271, 498 P.3d 765, this Court failed to correctly interpret § 46-18-203(8)(c), MCA, when we stated that revocation pursuant to that subsection required a finding that the MIIG had been exhausted. *Sadiku*, ¶ 10. Like in *Oropeza*, our clarification of the law here does not disturb our finding in *Sadiku*; that case answered a different question. *Sadiku*, ¶ 19.

[2] The State claims that Pennington's arguments are "merely objectionable" rather than illegal and that the relevant issue was improperly preserved. However, clearly defense counsel presented arguments to the District Court that it could not revoke Pennington's deferred sentence under the MIIG and, thus, the issues presented here are properly before the Court on appeal.

determine that the MIIG had been exhausted.  However, § 46-18-203(8)(c), MCA, only requires the sentencing judge find that the "offender's conduct indicates that the offender will not be responsive to further efforts under the incentives and interventions grid[.]" While the District Court did not specifically state that Pennington would not be responsive to further efforts, it is clear, based on the record and the testimony provided, that the District Court was persuaded that further efforts would be futile.  Schell detailed that Pennington had been given "multiple chances to change her behavior," that none of the interventions imposed had worked, and that Pennington would not be responsive to further incentives and interventions.  That testimony provided the basis for the court's judgement which was premised on the court's "concern" about the "subsequent violations of probation" and that Pennington was on the wrong track.

¶24   Pennington could have originally been sentenced to ten years for her felony theft conviction.  As a result, following the court's determination that her deferred sentence had been violated through compliance violations and that further efforts under the MIIG would be futile, the court had full authority to reimpose the ten-year sentence pursuant to § 46-18-203(7)(a)(iv), MCA.

¶25   *Issue Two:  Following revocation of a deferred sentence, is the offender entitled to credit for elapsed time prior to the revocation?*

¶26   Any sentence imposed under subsection (7) of § 46-18-203, MCA, requires that the judge take four steps: first, "consider any elapsed time"; second, "consult the records and recollection of the probation and parole officer"; third, "allow all of the elapsed time served without any record or recollection of violations as credit against the sentence"; and, fourth,

state the reasons for any denial of credit for elapsed time in the order. Section 46-18-203(7)(b), MCA; *see Jardee*, ¶ 7 (concluding that the 2017 version of the statute eliminated the discretion of district court judges when deciding whether to grant or deny credit for street time).

¶27 In *Jardee*, a case regarding the revocation of a suspended sentence, we determined that the denial of "street time credit"[3] by the District Court was warranted under the facts of that case. Referring to § 46-18-203(7)(b), MCA, this Court noted under the new sentencing regime that the sentencing court must "allow all of the elapsed time served without any record or recollection of violations as credit against the sentence," and stated that a sentencing court "might be tasked with parsing out periods of time for compliance determination . . . ." *Jardee*, ¶ 10. The sentencing judge had no discretion over whether to follow the four steps set forth in subsection (7)(b). *Jardee*, ¶ 13. To defeat any credit for elapsed time, the court must make a "specific demonstration of a record or recollection of violations in the period in question." *Jardee*, ¶ 10. We held the court satisfied the statutory requirements when it denied credit for elapsed time. *Jardee*, ¶ 13.

¶28 Recently, in *State v. Gudmundsen*, 2022 MT 178, ___ Mont ___, ___ P.3d ___, a case also regarding revocation of a suspended sentence, we determined that a district court's denial of credit for elapsed time based on "repeated violations of terms and conditions" but "without a connection to the claimed period" was insufficient. *Gudmundsen*, ¶ 10. We clarified that a district court cannot deny credit for elapsed time

---

[3] Now referred to as "elapsed time." *See* § 46-18-203(7)(b), MCA.

"unless specific violations during the times in question are demonstrated." *Gudmundsen*, ¶ 14.

¶29    The first recorded or recollected violation of the conditions of the deferred sentence, according to Pennington, occurred on December 4, 2018, 335 days from her January 4, 2018 sentencing.  December 4, 2018 marks the date on which Pennington admitted drinking to Schell.[4]  Yet, the sentencing judge's order did not provide any explanation for its denial of credit for elapsed time nor point to any specific record or recollection of a violation during the period set forth by Pennington.  The order merely stated that the court "reviewed the file numerous times" and concluded that the imposed sentence was "the best sentence for rehabilitation of the defendant."  Consequently, Pennington was illegally sentenced.  The absence of any record of violations during the aforementioned 335-day period requires that Pennington receive credit for that elapsed time.

## CONCLUSION

¶30    The District Court properly interpreted and applied §§ 46-18-203(8)(c) and -203(7)(a)(iv), MCA, in sentencing Pennington.  This Court affirms the ten-year sentence imposed on Pennington.  However, § 46-18-203(7)(b), MCA, imposes a legal mandate on the District Court to properly credit Pennington for elapsed time and to specifically explain any denial of credit for elapsed time.  This Court reverses the District Court's sentence to the extent it did not factor in credit Pennington is entitled to for elapsed

---

[4] The State acknowledged that if this Court reached the merits on Pennington's claim for credit for elapsed time, then this Court should remand the matter to the District Court for proper determination of such credit.

11

time and remands with instructions to amend the sentence to reflect 335 days of credit for elapsed time.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE