FILED

05/16/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0550

DA 21-0550

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 89N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

MISTY JUNE MILLER,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 2018-32
Honorable Brenda R. Gilbert, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

      Nathan D. Ellis, Ellis Law, PLLC, Helena, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney
General, Helena, Montana

      Kendra Lassiter, Park County Attorney, Shannan Piccolo, Deputy County
Attorney, Livingston, Montana


                 Submitted on Briefs:  April 5, 2023

                       Decided:  May 16, 2023

Filed:

_____
              Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Misty June Miller (Miller) appeals from the Findings of Fact and Conclusions of Law and the Judgment and Order issued by the Sixth Judicial District Court, Park County, on September 8, 2021, revoking Miller's prior suspended sentence and imposing a three-year sentence, with no time suspended, to the Department of Corrections (DOC). We affirm.

¶3      Miller was charged in April 2018 with criminal possession of dangerous drugs, a felony. She ultimately pled guilty and on September 16, 2019, the District Court deferred imposition of sentence for a period of three years. On May 20, 2020, based on violations of the terms of her deferred sentence, the State filed a Petition to Revoke. Miller admitted the allegations in the petition and the District Court imposed a new, three-year suspended sentence to the DOC on August 12, 2020. This sentence was specifically conditioned upon Miller enrolling in and completing the Sixth Judicial District Court's Treatment Court. Although Miller enrolled in the Treatment Court in August 2020, on November 17, 2020, following hearing, she was terminated from participation and thus, did not complete the Treatment Court program. Based on her failure to complete Treatment Court, the State filed a Petition to Revoke, alleging a single compliance violation—termination from

2

Treatment Court prior to its completion. Hearing on the petition to revoke was held on August 4, 2021. At the conclusion of the hearing, the District Court concluded "there is good cause for revoking the sentence" and revoked Miller's suspended sentence. On September 1, 2021, following a dispositional hearing, the District Court imposed a new three-year DOC sentence with no time suspended.

¶4 On appeal, Miller contends the unsuspended DOC sentence is illegal based on the District Court's failure to make a specific finding that Miller would not be responsive to further efforts under the Montana Incentives/Interventions Grid (MIIG) as required by § 46-18-203(8)(c), MCA. Contrarily, the State contends the District Court properly revoked Miller's suspended sentence after considering substantial information from both Treatment Court and criminal case proceedings showing exhaustive sanctions and interventions. The State asserts that to the extent the District Court did not make a specific finding that Miller would not be responsive to further efforts under the MIIG, such a finding was implied from the District Court's statements.

¶5 We review revocations of a suspended sentences for an abuse of discretion. *State v Pennington*, 2022 MT 180, ¶ 16, 410 Mont. 104, 517 P.3d 894.

¶6 The MIIG guides community supervision of offenders with the goal of promoting accountability and long-term behavioral change. *State v. Oropeza*, 2020 MT 16, ¶ 5, 398 Mont. 379, 456 P.3d 1023. It provides for two types of violations of conditions—compliance and non-compliance violations. Section 46-18-203(11), MCA. Pursuant to § 46-18-203(8)(c), MCA, for a compliance violation, the court may revoke an offender's

3

suspended sentence upon finding (1) the offender violated the terms and conditions of the suspended sentence and (2) that "the offender's conduct indicates that the offender will not be responsive to further efforts under the incentives and interventions grid." Upon making these findings, a district court is authorized to sentence the offender as provided in § 46-18-203(7), MCA. Under § 46-18-203(7), MCA, the court may revoke the prior suspended sentence and "require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence[.]" The parties agree Miller violated the terms and conditions of her suspended sentence by being terminated from participation in the Treatment Court and that this violation was a compliance violation. However, the parties dispute the sufficiency of the District Court's findings as related to Miller's conduct and her responsiveness to further incentives and interventions under the MIIG.

¶7 At the time the District Court revoked Miller's suspended sentence and imposed a DOC commitment, the court had presided over Miller's case for just short of 3 ½ years.[1] During that time, Miller perpetually struggled with ongoing drug use[2] despite in-patient treatment, drug testing, participation in Treatment Court, and the employment by both Probation and Treatment Court of graduated sanctions and incentives over time. During

---

[1] The District Court judge presided over Miller's case both in District Court and as the presiding judge in the Treatment Court.

[2] The very same conduct that led to her initially being charged with criminal possession of dangerous drugs, a felony.

supervision under her deferred imposition of sentence, in response to testing positive for methamphetamines and THC, Miller's conduct was addressed using multiple interventions including increased reporting, activity restrictions, increased supervision, and GPS monitoring. When she cut off her GPS and absconded, she was given a one-month jail sanction and then placed for treatment at the Passages Alcohol and Drug Treatment Program. Due to mental health problems, Miller was discharged from Passages prior to completing the treatment program. Thereafter, her supervising probation officer facilitated her placement into a sober living facility. Miller was discontinued from the sober living facility due to her non-compliant behavior. From Miller's conduct during this time, it was no doubt clear to the District Court that Miller was not responsive to further probation-type efforts and needed increased supervision and assistance to address her ongoing drug use and mental health issues. As such, the District Court revoked her deferred imposition of sentence and imposed a three-year suspended sentence with the primary condition that Miller enroll in and complete Treatment Court.

¶8 Shortly after her induction into drug court, Miller tested positive for amphetamine and methamphetamine. She was then placed on a jail sanction and assisted in securing acceptance into the Montana Chemical Dependency Center (MCDC) for inpatient treatment. Miller was accepted into MCDC despite MCDC's concern that Miller had previously failed to complete MCDC's program on two prior occasions and likely needed longer-term, intensive in-patient treatment. Upon completion of MCDC, Miller transitioned to out-patient treatment with Southwest Chemical Dependency Program.

Within a week of completing MCDC, Miller again tested positive for methamphetamine and admitted use. Following hearing, Miller was terminated from participation in the Treatment Court and the State then sought another revocation.

¶9     At the time of the revocation hearing, having worked with her for nearly 3 ½ years, the District Court was well familiar with Miller's inability, despite increased supervision and numerous interventions, to address her substance use disorder while being supervised in the community. Further, the District Court specifically referenced § 46-18-203, MCA, indicating that completion of Treatment Court was the fundamental condition which was violated and stating that if the judge finds "that the offender's conduct indicates that the offender will not be responsive to further efforts under the Incentives and Interventions Grid, the judge may sentence the offender as provided in Subsection 7, which is the sentencing component for noncompliance violations." The District Court went on to note, "there had been a number of violations, and the Treatment Court Team had worked with [Miller] for some time to try to keep her in the Treatment Court, which is what we all wanted to have happen, and ultimately, it came to the point where we could see that she was not able to comply in the community[.]"

¶10    This Court "adheres to the doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence." *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985). Here, the District Court attempted to assist Miller in addressing her substance use disorder, employing

6

graduated and measured responses designed to promote accountability and long-term behavioral change. Similar to the goal of the MIIG, the entire point of participation in Treatment Court was to provide Miller—through education, treatment, and appropriate incentives and sanctions—the tools to successfully address her substance use disorder while remaining in the community. The District Court was not quick to disregard graduated interventions and exhibited a commitment to impose incarceration as the last alternative to addressing Miller's conduct. By the time the District Court sentenced Miller to a DOC commitment—nearly 3 ½ years after her initial engagement with the District Court—Miller's conduct evidenced she would not be responsive to further efforts under the MIIG. While the District Court's written findings could have been more specific, we conclude from the record before us that, although the District Court did not make a specific finding that Miller would not be responsive to further efforts under the MIIG, such a finding was implied from the District Court's statements and is overwhelmingly supported by the record.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12 Affirmed.

/S/ INGRID GUSTAFSON

7

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR