FILED

09/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0116

DA 24-0116

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 218

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

JACOB TYLER POWELL,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC-17-042
Honorable David J. Grubich, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Nicholas T. Hine, Hine Law PLLC, Brooklyn, New York

     For Appellee:

        Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Amanda L. Lofink,
Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  July 9, 2025

Decided:  September 30, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Jacob Tyler Powell appeals the January 2024 judgment and sentence of the Montana Eighth Judicial District Court, Cascade County, sentencing him on revocation. We address the following issue:

> *Did the District Court erroneously deny credit for street time based on the Defendant's failure to pay restitution?*

We reverse and remand for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In April 2017, Powell pleaded guilty pursuant to a plea agreement to burglary, theft, and criminal mischief. On September 13, 2017, the District Court sentenced him to the Montana Department of Corrections (DOC) for concurrent seven-year sentences on the burglary and theft convictions, with four years suspended, and a concurrent six-month jail sentence for criminal mischief. The court also ordered that Powell was jointly and severally liable with his co-defendant for $5,779 in restitution. As pertinent, the court imposed the following enumerated sentencing conditions:

12. "The Defendant shall pay all fines, fees, and restitution ordered by the sentencing court."

13. "The Defendant shall pay the following fees and/or charges:

   (a) The Probation and Parole Officer shall determine the amount of supervision fees (§ 46-23-1031, MCA) to be paid each month in the form of money order or cashier's check to the Department of Corrections. . . . The DOC shall take a portion of the Defendant's inmate account if the Defendant is incarcerated."

   (b)-(e), (i) Surcharges, pursuant to § 46-18-236, MCA, of "$15 for each misdemeanor"; "the greater of $20 or 10% of the fine for each felony offense"; and "$50 for each misdemeanor or felony charge under Title 45"

2

for victim and witness advocate programs.  Also, a "$10 per count . . . court information technology fee" and "costs of legal fees and expenses defined in § 25-10-201, MCA, plus costs of jury service, prosecution, and pretrial probation, or community service supervision or $100 per felony or $50 per misdemeanor, whichever is greater."

(h)[1]  "The Defendant shall pay court ordered restitution by money order or cashier's check sent to the Department of Corrections, Collections Unit, P.O. Box 201350, Helena, MT 59620.  The Defendant shall be assessed a 10% administration fee on all restitution ordered.  All of the methods for collection of restitution provided under § 46-18-241 through § 46-18-249, MCA, shall apply[.] . . .  [T]he Defendant shall sign a statement allowing any employer to garnish up to 25% of his wages.  The Defendant shall continue to make monthly restitution payments until he/she has paid full restitution, even after incarceration or supervision has ended."

(Some internal statutory citations omitted.)

¶3     DOC placed Powell in Connections Corrections, and then at the Great Falls Transition Center until July 2018, when it granted conditional release.  On January 11, 2020, Powell began serving the four-year suspended portion of his sentence.

¶4     On April 19, 2023, the State petitioned pursuant to § 46-18-203, MCA, to revoke Powell's probation based on his probation officer's April 17, 2023 Report of Violation (ROV), wherein the probation officer alleged one noncompliance violation and nine compliance violations.  The alleged noncompliance violation was that Powell was recently charged with criminal possession of dangerous drugs and drug paraphernalia.  The alleged compliance violations included, as pertinent, that:

---

[1] Powell's September 2017 sentence noted that the court "waived" the PSI-recommended conditions 13(f) (payment of cost of assigned counsel) and 13(g) (payment of cost of PSI) on Powell's objection at sentencing.  Powell's September 13, 2017 sentencing hearing is not a matter of record on appeal.

(1)    "On September 13, 2017, the Court ordered Mr. Powell to pay a number of Court fines and fees totaling $335. Since that date of sentencing, Mr. Powell has failed to pay any fines and/or fees to the Clerk of Court as ordered by the Court."

(2)    "Since the date of sentence, Mr. Powell has failed to make any Supervision Fee payments."

(3)    "As of April 17, 2023, Mr. Powell owes $5,165.90 in restitution. Mr. Powell has failed to make any restitution payment since January 3, 2020, which was about the time he started his suspended sentence."

¶5    In the ROV, the probation officer noted that, on two separate occasions, he implemented corrective measures, including an intervention hearing and a case management response, to address Powell's illegal drug use and possession, residence, reporting, and employment.[2] However, beyond generally alleging that Powell violated the restitution and fees conditions, the probation officer did not note whether he previously addressed those conditions with Powell or implemented any corrective measures for the alleged nonpayment. The probation officer also did not identify any specific violations for the time period between August 6, 2020, and January 6, 2023. Nevertheless, the probation officer recommended Powell receive no credit for street time due to "a pattern and complete disregard to the court ordered rules."

---

[2] Specifically, the probation officer noted that Powell had "depart[ed]" his prior job "between July and December 2021," and "failed to obtain any known proper employment where he was on a payroll. He claimed that he was doing 'spot jobs.' On January 6, 2023, Mr. Powell reported that he was working for JT Roofing." On April 17, 2023, the probation officer "called the owner of JT Roofing who reported that he has used Mr. Powell on a couple of spot jobs," however, he "was not on the payroll and the last time he used Mr. Powell was a couple of months ago. Mr. Powell has not had proper gainful employment for over a year."

4

¶6 At the August 2, 2023 hearing on the State's revocation petition, Powell answered "true" to the noncompliance violation pursuant to an agreement with the prosecutor to dismiss the alleged compliance violations. The District Court subsequently dismissed the nine remaining violations and set a dispositional hearing for sentencing on revocation.

¶7 At the January 3, 2024 dispositional hearing, the parties disagreed about how much street time credit Powell should receive under § 46-18-203(7)(b), MCA. Powell argued that, because there was no record of any specific condition violation from August 6, 2020, through January 6, 2023, he was entitled to two years and five months (883 days) of street time credit under the statute. The probation officer did not testify, so the State relied on his April 2023 ROV, arguing that, although there were no specific violations alleged for that time period, it was nonetheless apparent that Powell had "continued violating his conditions since the beginning of his probation" because he had not paid restitution since January 2020, never paid any fines or fees, and had no employment since 2019.[3]

¶8 The District Court noted numerous violations alleged in the ROV, including those resulting in sanctions,[4] and found that Powell was "essentially noncompliant throughout" his suspended sentence and "showed a pattern of complete disregard" for court-ordered rules. However, despite acknowledging that the ROV did not identify "any specifically documented violations" from August 6, 2020, to January 6, 2023, the court concluded

---

[3] The State qualified, however, that the ROV did note "some spot jobs in January through April of 2023." *See*, *supra* note 2.

[4] The court noted alleged violations related to drug use, employment, and reporting, which comported with the ROV's record of interventions for those violations.

Powell was nonetheless in ongoing noncompliance "during that timeframe" with the restitution and fees conditions for continued nonpayment.[5] Therefore, the court denied any credit for street time. Powell timely appeals.

## STANDARD OF REVIEW

¶9 A district court's decision to revoke a suspended sentence is discretionary under § 46-18-203(7), MCA, and therefore we review a court's revocation decision for an abuse of discretion. *State v. Charles*, 2025 MT 58, ¶ 10, 421 Mont. 210, 565 P.3d 1191; *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Calculating credit for elapsed street time upon revocation, however, "is not a discretionary act, but a legal mandate" under § 46-18-203(7)(b), MCA. *Charles*, ¶ 10; *State v. Pennington*, 2022 MT 180, ¶¶ 16-18, 30, 410 Mont. 104, 517 P.3d 894. Therefore, whether a defendant is entitled to street time credit under § 46-18-203(7)(b), MCA, is a legal question we review de novo for correctness. *Charles*, ¶ 10 ("a district court's determination of street time or time served credit is reviewed for legality and we exercise de novo review"); *State v. Gudmundsen*, 2022 MT 178, ¶ 8, 410 Mont. 67, 517 P.3d 146 ("when the district court's authority to take a specific action is at issue, the question is one of law and our review is de novo"); *accord Jardee*, ¶ 5. To any extent a court's street time credit determination under § 46-18-203(7)(b), MCA, is based on findings of fact, we review those findings for clear error. *Charles*, ¶ 10 (citing *Jardee*, ¶¶ 5, 12).

---

[5] The court incorrectly stated that Powell did not make "even one" restitution payment since September 2017, though the ROV indicated Powell's last payment was in January 2020.

6

**DISCUSSION**

¶10 *Did the District Court erroneously deny credit for street time based on the Defendant's failure to pay restitution?*

¶11 Powell contends that, under *Hendrickson v. Salmonsen*, No. OP 24-0213, 556 P.3d 512 (July 16, 2024), without any evidence of a clear directive from his probation officer as to when and in what amounts he was to make restitution or fee payments, or prior intervention and corrective measures, nonpayment could not constitute a "violation" barring credit for elapsed time under § 46-18-203(7)(b), MCA. The State answers that it was not required to provide evidence of intervention under the statute, only "any record or recollection of violations," in order to defeat street time credit.

¶12 "We interpret statutes in the context of the statutory scheme as a whole to pursue the Legislature's intent and to avoid an absurd result." *State v. Lodahl*, 2021 MT 156, ¶ 16, 404 Mont. 362, 491 P.3d 661 (citing § 1-2-101, MCA); *Clark Fork Coalition v. Mont. Dep't of Natural Res. & Conservation*, 2021 MT 44, ¶ 36, 403 Mont. 225, 481 P.3d 198. "We must harmonize statutes relating to the same subject, as much as possible, giving effect to each." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont 1, 185 P.3d 1003.

¶13 Section 46-18-203(7)(b), MCA, provides that, upon revoking a suspended or deferred sentence,

> the judge shall consider any elapsed time, consult the records and recollection of the probation and parole officer, and allow all of the elapsed time served without any record or recollection of violations as a credit against the sentence. If the judge determines that elapsed time should not be credited, the judge shall state the reasons for the determination in the order.

¶14    The statute allows for elapsed time credit for periods after or between violations, including after the revocation petition is filed. *Charles*, ¶ 15 (citing *Gudmundsen*, ¶¶ 4-6, 14); *accord Jardee*, ¶ 10 (application of § 46-18-203(7)(b), MCA, may require "parsing out periods of time for compliance determination"). A court may not "base a denial of street time credit solely on a 'pattern' of criminal behavior." *Jardee*, ¶ 11; *Gudmundsen*, ¶ 13 (generic reference to "repeated violations" is insufficient to deny credit "without a connection to the claimed" time period). Instead, the defendant is statutorily entitled to street time credit unless the State demonstrates a specific, record violation during the times in question. *Charles*, ¶ 12 (citing *Gudmundsen*, ¶ 14); *Pennington*, ¶ 29; *Jardee*, ¶ 10 n.1 ("the State has the burden of proving . . . whether street time should be denied"). Violations may be continuous or ongoing, so long as the record or recollection of the supervising probation or parole officer points to specific, actual instances of offender conduct constituting a violation of the terms of a sentence. *See*, *e.g.*, *Jardee*, ¶¶ 11-12 (offender did not live at his reported address but "always reported" to his probation officer that he did); *State v. Johnson*, 2022 MT 216, ¶¶ 23-29, 410 Mont. 391, 519 P.3d 804 (admitted condition violation resulted in escalating sanctions which the offender failed to complete in the required timeframe).

¶15    Sections 46-18-241 through -251, MCA, govern restitution. Specifically,

> [a]s provided in 46-18-201,[6] a sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained

---

[6] Section 46-18-201(5), MCA (upon a finding of pecuniary loss suffered by the victim of the offense, "the sentencing judge shall, as part of the sentence, require payment of full restitution and interest to the victim"). *See also* § 46-18-201(4)(d)-(g), MCA (authorizing imposition of costs as conditions of a suspended or deferred sentence).

pecuniary loss.[7] . . . The duty to pay full restitution under the sentence remains with the offender or the offender's estate until full restitution is paid, whether or not the offender is under state supervision. If the offender is under state supervision, payment of restitution is a condition of any probation or parole.

Section 46-18-241(1), MCA. The law also requires that,

[f]or a felony offense, the court shall order the department of corrections to supervise the payment of restitution. For a misdemeanor offense, the court may order a restitution officer or other designated person to supervise the making of restitution and to report to the court any default in payment.

Section 46-18-245, MCA. The offender is also required to "pay the cost of supervising the payment of restitution," as provided in § 46-18-241(2)(a), MCA.

¶16     Felony and misdemeanor offenders must pay restitution and the cost of supervising restitution payments "until the offender has fully paid the restitution and the cost of supervising the payment of restitution." Section 46-18-241(2)(b)-(c), MCA. Felony offenders pay restitution to the DOC directly for disbursement; misdemeanor offenders pay restitution to the court for disbursement. Section 46-18-241(2)(b)-(c), MCA. Section 46-18-251, MCA, prescribes how restitution payments are to be allocated upon receipt by the DOC, the ordering court, or both. *Accord* Admin. R. M. 20.12.111 (2003) (DOC rules for disbursement of payments).

¶17     Section 46-18-244, MCA, governs the "type and time of payment[s]." While a felony offender is incarcerated, the DOC "shall take a percentage . . . of any money" in the offender's inmate account "and use the money to satisfy any existing restitution

---

[7] *See* § 46-18-242, MCA (investigation and report of victim's losses); § 46-18-243, MCA (defining "victim" and "pecuniary loss").

9

obligation." Section 46-18-244(6)(a), MCA; *see also* § 46-18-244(6)(b), MCA (requiring offender to authorize employer wage garnishment when "not incarcerated"). *Accord* Admin. R. M. 20.12.106(1)-(2) (2003) (authorizing confiscation of monies in inmate accounts and wage withholding to satisfy restitution obligations while incarcerated). During any period that the offender is on probation or parole,

> the probation and parole officer shall set a monthly restitution payment amount by dividing the total amount of unpaid restitution by the number of remaining months of probation or parole. The probation and parole officer may adjust the monthly payment up or down by a maximum of 10%, depending on the offender's circumstances.

Section 46-18-244(6)(c), MCA. *Accord* Admin. R. M. 20.12.106(4) (2003) ("[o]ffenders under supervision of adult probation and parole or a prerelease center shall submit restitution payments directly to the department in an amount determined by the offender's probation and parole officer or case manager in accordance with 46-18-244(6), MCA"); Admin. R. M. 20.12.103(2) (2003) (DOC record-keeping requirements, including for "each payment the offender has paid and how the department applied it to the offender's outstanding restitution obligation").

¶18    The law also provides for "waiver or modification" of restitution where the offender shows "that the circumstances upon which [the court] based the imposition of restitution, amount of the victim's pecuniary loss, or method or time of payment no longer exist or that it otherwise would be unjust to require payment as imposed." Section 46-18-246, MCA. After hearing and upon such findings, "the court may adjust or waive unpaid restitution or the amount to be paid," "extend the restitution schedule," or "modify the time or method of making restitution." Section 46-18-246, MCA; *accord* § 46-18-241(3), MCA (upon

10

finding an offender is unable to pay, the court may order community service in lieu of restitution). When an offender "is in default," the court may order a show cause hearing under § 46-18-203, MCA, as provided in § 46-18-247, MCA. Upon finding the default "was attributable to the offender's failure to make a good faith effort to obtain the necessary funds for payment . . . , the court may take any action provided for in 46-18-203." Section 46-18-247(2), MCA; *accord* § 46-18-203(6)(b), MCA ("when a failure to pay restitution is the basis for [a revocation] petition, the offender may excuse the violation by showing sufficient evidence" that nonpayment was not for lack of "a good faith effort to obtain sufficient means to make the restitution payments as ordered").

¶19     The impetus of §§ 46-18-241 through -251, MCA, is that payment of restitution is an ongoing obligation the offender may not discharge, even after serving his sentence, until paid in full or absent some showing that it "would be unjust to require payment as imposed." Section 46-18-241(1), MCA ("[t]he duty to pay full restitution under the sentence remains with the offender . . . until full restitution is paid, whether or not the offender is under state supervision"); § 46-18-241(2)(b)-(c), MCA (obligation continues "until the offender has fully paid the restitution and the cost of supervising the payment of restitution"); § 46-18-246, MCA. The law also imposes an obligation upon the State, i.e., DOC and Probation and Parole, to "supervise" restitution and structure payments in a realistic manner, taking into consideration "the offender's circumstances." Section 46-18-245, MCA (court "shall order" DOC "to supervise the payment of restitution" for felony offenders); § 46-18-244(6)(a), MCA (DOC "shall take a percentage" of inmate account to satisfy restitution); § 46-18-244(6)(c), MCA ("probation and parole

11

officer shall set a monthly restitution payment amount"). Finally, in the event of nonpayment, the law allows an offender to avoid revocation for default if he can show a "good faith effort" to satisfy his restitution obligation. Sections 46-18-247(2), -203(6)(b), MCA.

¶20 We recognized some of these DOC obligations regarding supervision of restitution payments in *State v. Puccinelli*, 2024 MT 114, 416 Mont. 444, 539 P.3d 441. There, we considered whether the lower court abused its discretion in revoking Puccinelli's suspended sentence for failure to pay full restitution "in a timely manner."[8] We ultimately held that it did, based on its erroneous application of § 46-18-203, MCA. *Puccinelli*, ¶ 36 (failure to pay restitution was a compliance violation that should have been excused under § 46-18-203(6)(b), MCA, for Puccinelli's "good faith effort" to stay current with payments). In reversing the lower court, we made several pertinent observations concerning Puccinelli's probation officer's conduct and Probation and Parole's obligations in general when supervising restitution payments, to wit:

> [Puccinelli's] supervising officer did not specifically determine the amount of [her] restitution payments, did not consult with her about her finances, and other than discuss that he did not expect she would pay off the restitution prior to expiration of her sentence, . . . did not advise her of his expectations related to restitution. Throughout her entire probationary period, [Puccinelli's] supervising officer did not assist her in budgeting or decision-making regarding her finances, did not advise or notify her that he

---

[8] In *Puccinelli*, § 46-18-203, MCA, provided that, upon finding a compliance violation, a sentencing court was required to make an additional finding regarding whether "the appropriate violation responses under the incentives and interventions grid have been exhausted and documented in the offender's file." *See Puccinelli*, ¶¶ 26, 30 (citing § 46-18-203(8), MCA (2021), and the Montana Incentives/Intervention Grid for Adult Probation & Parole). In 2023, the Legislature repealed this additional required finding. *See* 2023 Mont. Laws ch. 530, § 1 (effective October 1, 2023).

considered her in default of her restitution or in violation of her probation, and did not counsel her that he intended to seek revocation of her suspended sentence should she not make full restitution by the time her sentence was set to expire. In fact, the only discussion they did have about her payment of restitution was that he did not expect she could pay it in full before her sentence expired. [Puccinelli] was led to believe she was satisfactorily meeting the requirements of her probation. . . . He further testified it was his job to require her to make regular payments to her ability and at no time prior to filing his report of violation had he addressed with her any deficiency he perceived in her making good faith payment of her restitution.

It is incumbent on a supervising officer to work with an offender and to make sure the offender is apprised of any violations perceived or asserted by the supervising officer so the offender can take steps to address the deficiency. This is the very purpose of the [Montana Incentives/Intervention Grid (MIIG)]. Pursuant to the MIIG, [Probation and Parole] has an obligation to monitor offenders it supervises to determine their financial ability to meet court-ordered financial obligations, including restitution, and address, through graduated interventions, their failures in this regard prior to seeking revocation.

*Puccinelli*, ¶¶ 28, 34-35.

¶21 With the statutory scheme for restitution and its governing principles in mind, we now turn to whether Powell's nonpayment of restitution constituted a "violation" barring credit for street time on his revocation sentence under § 46-18-203(7)(b), MCA. Here, the District Court agreed with the State that, although the ROV did not identify any specific, actual violations occurring between August 6, 2020, and January 6, 2023, Powell was nevertheless noncompliant during that time period due to his failure to pay restitution and fees. The State relies on *Jardee* and *Johnson* for the proposition that a violation may be ongoing, so long as it is within the "record or recollection" of a probation officer, and contends that *Hendrickson* and *Puccinelli* are distinguishable.

13

¶22 In *Jardee*, the defendant had a "continuing obligation to report his proper address" to his probation officer pending disposition of a probation revocation petition. But the record established that, "from the time [he was] released" on bail, Jardee "continue[d] to lie" to his probation officer about where he was living. The probation officer testified at sentencing that, when Jardee reported, "I'd *always ask* and make sure" he was living at his reported address, and Jardee "*always assured* that's the only place he was staying." *Jardee*, ¶ 12 (emphasis added). In fact, Jardee was not living at his reported address but was instead living at a different address the entirety of his release on bond. We held this "substantial evidence" was sufficient to deny street time credit because Jardee's repeated misreporting was continuous throughout the relevant time period. *Jardee*, ¶¶ 12-13.

¶23 Similarly, in *Johnson*, ¶¶ 23-29, we held that the defendant was not entitled to street time credit due to his "continuous violations." Johnson claimed he committed no violations during the period between two admitted violations and was thus entitled to street time credit for that period. We disagreed. Instead, Johnson's initial admission to a condition violation resulted in a documented case management response, sanctions, violations of those sanctions, an intervention hearing and more sanctions, and finally, failure to comply with those sanctions within the prescribed timeframe, including his being terminated from required sex offender treatment for noncompliance, which ultimately triggered revocation proceedings. *Johnson*, ¶¶ 5-8, 26. We held that Johnson's "specific and ongoing violations" during that time period barred credit for street time. *Johnson*, ¶ 29.

¶24 Conversely, in *Hendrickson*, the defendant sought a writ of habeas corpus, asserting the sentencing court illegally denied him street time credit under § 46-18-203(7)(b), MCA.

14

The State answered, as pertinent, that Hendrickson was not entitled to any street time credit after October 2, 2017, "because he did not make any restitution payments after that date and was therefore not in compliance" with the terms of his probation. *Hendrickson*, *8. We disagreed that Hendrickson's failure to pay any restitution after that date constituted a violation under § 46-18-203(7)(b), MCA. First, the parole officer's notes "indicate[d] that he never provided Hendrickson with a clear directive as to an adequate monthly payment amount or a monthly due date for these payments."[9] Although Hendrickson made restitution payments, they were sporadic and in varying amounts. The parole officer noted when he discussed payments with Hendrickson, but when payments lapsed, there was no indication of follow up. As a whole, the parole officer's notes demonstrated that Hendrickson "had no set due date or payment amount but was instead expected to pay what he could when he could." *Hendrickson*, *10.

¶25 Second, we rejected the State's contention that Hendrickson was out of compliance after his last restitution payment on October 2, 2017. Instead, after that payment, Hendrickson "would remain in compliance until he failed to make the next payment on its due date and in the required amount." *Hendrickson*, *10. The parole officer's next mention of restitution payments was in December 2017, and even then, his note did not demonstrate that he "did anything other than bring the matter to Hendrickson's attention; there [was] no indication that he set a deadline for payment or implemented any corrective measures" for

---

[9] Although it was not strictly analogous, we noted that Hendrickson's parole officer's failure to give him a clear directive regarding payment of restitution was similar to the probation officer's conduct in *Puccinelli*. *Hendrickson*, *9; *compare Puccinelli*, ¶¶ 28, 34-35, *supra*.

nonpayment. *Hendrickson*, \*\*10-11. Accordingly, we held the State could not "point to an 'actual violation . . . found in the record or recollection of the probation officer' because the record [did] not contain any indication as to the point at which the lack of restitution payment became a violation." *Hendrickson*, \*11.[10, 11]

¶26 Here, Powell's sentence required him to "pay all fines, fees, and restitution" as ordered. It expressly enumerated various costs and surcharges but provided that Probation and Parole would determine the amount of monthly "supervision fees" pursuant to § 46-23-1031, MCA.[12] The sentence did not specify a deadline for payment of costs or fees. The sentence further provided that Powell was to pay "monthly restitution payments until [he] has paid full restitution, even after incarceration or supervision has ended," but it did not specify on what date the monthly payments were due or in what amount, nor did it specify a time by which he must fully satisfy his restitution obligation. Instead, the

---

[10] We employed a similar analysis in rejecting the State's claim that Hendrickson was not entitled to street time credit from August 29, 2016, the day he failed to call his probation officer "as scheduled," through September 25, 2016, when he reported "as required." *Hendrickson*, \*\*4-5. Even though Hendrickson had a "continuing obligation" to report in person, his missed appointments "were not ongoing violations" of that obligation; instead, the violations occurred "where he was *directed to* report in person and failed to do so." *Hendrickson*, \*5 (emphasis added).

[11] *Accord Gudmundsen*, ¶ 13 (court's denial of street time credit based on "repeated violations . . . without a connection to the claimed period was merely a generalized 'pattern of criminal behavior' . . . insufficient under the statute to deny the requested credit" (citing *Jardee*, ¶ 11)); *Charles*, ¶ 16 (court erroneously denied street time credit for a period during which there were no specific, recorded violations); *Pennington*, ¶ 29 (court erroneously denied street time credit in "the absence of any record violations" during that time).

[12] Section 46-23-1031, MCA, provides for calculation of "supervisory fees," waiver or reduction of fees for "significant financial hardship," and DOC collection and deposit of fees.

16

sentence stated generally that "[a]ll of the methods for collection of restitution provided under § 46-18-241 through § 46-18-249, MCA, shall apply."

¶27 In his ROV, Powell's probation officer asserted that Powell violated his payment of fees/costs condition for not paying any of the $335 court-ordered "fines and fees," or "any supervision fees," since his September 13, 2017 sentencing. However, the ROV did not indicate whether the probation officer ever determined the amount of monthly "supervision fees" owing, as required under Powell's sentence and § 46-23-1031, MCA; communicated that information to Powell; or attempted to collect those fees or any other fees or costs during Powell's probation.

¶28 The probation officer also asserted that Powell violated the restitution payment condition because he "failed to make any restitution payment since January 3, 2020," and still "owe[d] $5,165.90 in restitution" as of the April 17, 2023 ROV. However, the ROV did not indicate whether the probation officer consulted with Powell or "set a monthly restitution payment amount," as required by § 46-18-244(6)(b), MCA, or structured a payment schedule appropriate to Powell's financial "circumstances." The probation officer also did not identify any specific missed payments or establish that he ever discussed Powell's nonpayment with him or implemented graduated interventions to address and correct nonpayment prior to recommending revocation of Powell's suspended sentence based, in part, on these alleged compliance violations.[13]

---

[13] Though the probation officer did implement corrective measures (a case management response and intervention hearing) to address Powell's drug use, drug possession, housing, reporting, and employment.

17

¶29 As in *Hendrickson*, we reject the State's contention that Powell's failure to make restitution payments after January 3, 2020, constituted a violation of the terms of his sentence. Here, the record is completely void of any established monthly restitution payment amount, payment schedule, full payment deadline, or apprisal of and attempts to correct nonpayment deficiencies. Without any "clear directive" regarding payment, it was impossible to ascertain "the point at which the lack of restitution payment became a violation." *See Hendrickson*, \*\*10-11. Although the State seeks to analogize Powell's failure to pay restitution and fees to the ongoing or continuous violations in *Jardee* and *Johnson*, it has not provided substantial evidence of any *specific* nonpayment during the pertinent time period that constituted a violation. *Compare Jardee*, ¶ 12; *Johnson*, ¶¶ 25-26. In the absence of specific, discrete instances of conduct that violated the terms of his sentence and were connected to the subject disputed time frame, the State's general claim that Powell was continuously violating the payment conditions in the background throughout his sentence amount to little more than a "pattern" of behavior insufficient to defeat Powell's statutory entitlement to street time credit under § 46-18-203(7)(b), MCA.

¶30 Finally, we do not seek to minimize Powell's role in failing to make his restitution payments, because it is his ongoing duty to make payments until his restitution obligation is paid in full. Section 46-18-241(1), MCA. We must also acknowledge the State's duty to "supervise probationers . . . in accord with the conditions set by a sentencing judge" and with the goal to "regularly advise and consult with the probationer using effective communication strategies and other evidence-based practices to encourage the probationer to improve the probationer's condition and conduct." Section 46-23-1011(1), (4), MCA.

18

Accordingly, "[a] probation and parole officer who reasonably believes that a probationer has violated a condition of probation shall consult the incentives and interventions grid," i.e., the MIIG, "to determine an appropriate response." Section 46-23-1015(1), MCA (citing § 46-23-1028, MCA). The MIIG "guide[s] responses to [the] negative and positive behavior" of people under DOC supervision, "including responses to violations of supervision conditions, in a swift, certain, and proportional manner," and aids supervising officers in determining "when and how to exhaust and document appropriate graduated violation responses before initiating the revocation process." Section 46-23-1028(1)(e), MCA; *see also* § 46-23-1015, MCA (use of discretionary informal intervention hearing to "gain the probationer's compliance"). *Accord Puccinelli*, ¶ 35 ("[i]t is incumbent on a supervising officer to work with an offender and to make sure the offender is apprised of any violations perceived or asserted by the supervising officer so the offender can take steps to address the deficiency").

¶31 While the offender must pay restitution, Montana law places the onus of supervising and managing payment of restitution on the State while the offender is under State supervision. Sections 46-18-244(6), -245, MCA. Without evidence that his probation officer either supervised or managed payment of Powell's restitution during the disputed time period, the State has not established that Powell's nonpayment was a specific record "violation" barring credit for street time under § 46-18-203(7)(b), MCA.

## CONCLUSION

¶32 We hold that the District Court erroneously denied Powell street time credit under § 46-18-203(7)(b), MCA, when sentencing him on revocation. We reverse and remand to

19

the Eighth Judicial District Court to amend its January 2024 judgment and sentence to include credit for 883 days of street time.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON

Justice James Jeremiah Shea, Concurring.

¶33 I concur with the Court's holding for two basic undisputed reasons: (1) the burden to establish a payment schedule and enforce it rests with the Department of Corrections (DOC); and (2) the burden of proving whether street time should be denied rests with the State. Neither burden was met in this case. While this of course does not absolve Powell of his responsibility to pay the full restitution—another point on which we all agree—with no payment schedule in place, where do we draw the line to say *when* he failed to live up to that responsibility? Was it when he was granted conditional release in 2018? Was it when he began serving the suspended portion of his sentence in 2020? The most obvious and concrete answer would be the first time he failed to make a scheduled restitution payment in the amount determined by his probation officer as required by § 46-18-244(6), MCA, and Admin. R. M. 20.12.106(4) (2003). There's the rub.

¶34 When restitution is ordered in a criminal case, "we routinely consider our precedent in the fields of tort and contract law to determine whether the restitution award was appropriate." *State v. Lowry*, 2019 MT 191, ¶ 11, 397 Mont. 11, 446 P.3d 1148 (internal

20

quotation marks and citations omitted). In that regard, a defendant may assert any defense that could be raised in a civil action. *State v. Barrick*, 2015 MT 94, ¶ 19, 378 Mont. 441, 347 P.3d 241 (citing § 46-18-244(2), MCA). Looking at Powell's restitution obligation in a civil context, he was contractually obligated to pay restitution. Powell does not dispute that obligation. But while Powell does not contest the obligation itself, he contends that because he never received a clear directive from his probation officer as to when and in what amounts he was to make restitution or fee payments he did not commit a violation that would preclude his elapsed time credit. Considering Powell's argument in the civil context, Powell is essentially arguing that he could not have breached a term of the contract that was not included in the contract.

¶35 This is not a case of this Court requiring the DOC to implement financial compliance documentation in triplicate, as the dissent suggests. It is a case of the DOC implementing specific schedules for payment of restitution as the Legislature requires. Had that been done in this case, a lot less ink would have been spilled because there would be no question as to when Powell's violation occurred—when he missed his first payment; nor would there be any question as to what extent the violation was ongoing—until he got current with his obligations or otherwise made arrangements with his probation officer. But since there was no schedule implemented in this case, as required by § 46-18-244(6), MCA, and Admin. R. M. 20.12.106(4) (2003), the State has failed to meet its burden in this instance of proving that Powell's street time should be denied on that basis.

/S/ JAMES JEREMIAH SHEA

21

Chief Justice Cory J. Swanson, concurring and dissenting.

¶36 This is a simple case which calls for a simple holding. The evidence is undisputed—Powell violated the District Court's sentencing conditions for every day of his suspended sentence. Where there is a record or recollection of a continuing violation for the duration of the suspended sentence, a district court can deny elapsed time credit for the entire period. *See Jardee*, ¶ 12. Errors are creeping into our analysis of these revocation proceedings, specifically a conflation of the standard to prove a probation violation for revocation decision versus a record of violation for analyzing elapsed time credit. This case presents an opportunity to provide clarity, but the Court has instead created more confusion as to how district courts and the parties should calculate elapsed time credit.

¶37 Powell was convicted of a property crime—burglary, theft, and criminal mischief—whereby he deprived a victim of $5,779 of her property value. He was required by the District Court to repay that loss via restitution payments every month until it was paid in full. Given the nature of the offense, that was not an incidental or waivable sentence condition.

¶38 The State filed a petition to revoke Powell's suspended sentence for multiple alleged violations, including a new criminal offense and failure to pay fines, fees, and restitution. Powell made a plea deal with the State and admitted to only the commission of a new drug offense. This was a sufficient basis for the District Court to revoke his suspended sentence and proceed to resentencing. Section 46-18-203(7)(b), MCA.

¶39 It is important to parse the statutes with the correct phase or decision of the revocation proceeding. When a district court considers the question of whether a probationer has violated the conditions of a suspended or deferred sentence, it considers:

> (6)(a) At the hearing, the prosecution shall prove, by a preponderance of the evidence, that there has been a violation of:
> (i) the terms and conditions of the suspended or deferred sentence; or
> (ii) a condition of supervision after release from imprisonment imposed pursuant to 45-5-503(4), 45-5-507(5), 45-5-601(3), 45-5-625(4), or 45-5-711.
> (b) However, when a failure to pay restitution is the basis for the petition, the offender may excuse the violation by showing sufficient evidence that the failure to pay restitution was not attributable to a failure on the offender's part to make a good faith effort to obtain sufficient means to make the restitution payments as ordered.

Section 46-18-203(6), MCA. Thus, the State must prove by the preponderance of the evidence a violation of the probationer's sentence conditions. The court revoked Powell's suspended sentence based upon his admission of committing a new drug offense.

¶40 However, if the basis to seek a revocation ruling was the probationer's failure to pay restitution, the offender must carry his burden to excuse the violation by showing "sufficient evidence" the failure to pay restitution was not due to a failure to make a good faith effort. Despite the double-negative wording, the language appears to be akin to an affirmative defense, and such a showing will excuse the failure to pay restitution. *Puccinelli*, ¶ 36.

¶41 That good faith effort excusal is specific to the court's consideration of whether a probationer's suspended or deferred sentence should be revoked. It is not applicable to the court's consideration of whether to grant elapsed time credit when there is a record of failure to pay restitution. *Compare* § 46-18-203(6)(b), MCA, ("when a failure to pay

23

restitution is the basis for the petition, the offender may excuse the violation . . .") *with* § 46-18-203(7)(b), MCA, ("If a suspended or deferred sentence is revoked, the judge shall consider any elapsed time, consult the records and recollection of the probation and parole officer, and allow all of the elapsed time served without any record or recollection of *violations* as a credit against the sentence.") (emphasis added). The elapsed time credit statute instructs a district court to look at the entire record and look at all of the probationer's violations during that period. The "good faith" effort exception for restitution payments is not included in the elapsed time credit statute, and we should therefore not add it to that section. "[T]he judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶42 Even if the good faith exception was applicable to calculating elapsed time credit, it would not have excused Powell's failure to pay. The District Court addressed this issue, finding Powell made no effort to pay restitution during the suspended sentence, and was therefore in violation of the conditions of his sentence and judgment for the entire time:

> So throughout this process of your probation, there's a lot of things that you haven't been doing to stay in compliance, and just because a -- the ROV, the Report of Violation, doesn't specifically say, "He didn't make a payment this week," "He didn't make a payment this week," "He didn't make a payment this week," -- you haven't made any. That hasn't changed. And -- and look: *I'm not going to find -- make a finding of bad faith, but for a period of what? Since September of 2017 until January of 2024. Failing to make even one payment during that -- those years of time, does not demonstrate to this Court that you made any attempt at all to try to give the victim of your crime the money that he or she was entitled to.*

24

(Emphasis added.) The record here is sufficient to show the District Court did not abuse its discretion in finding Powell failed to pay restitution for the entirety of his suspended sentence. That constitutes a continuous violation of his sentence, and the District Court correctly denied elapsed time credit for that period. *See Jardee*, ¶ 12 (denying earned credit by finding parolee committed a continuous violation of a condition); *Johnson*, ¶ 25 (same). Even though the "good faith" excusal—for nonpayment of restitution—is not applicable to the elapsed time credit statue, the District Court found that if it was, Powell failed to carry his burden to show he made good faith efforts to pay restitution. Under our standard of review, that finding of fact was not clearly erroneous. *Charles*, ¶ 10 (citing *Jardee*, ¶¶ 5, 10). There is absolutely no basis to disregard the District Court's finding that Powell made no effort to pay.

¶43    I agree with the Opinion the statute puts the onus on DOC to create a payment schedule and enforce it against Powell if he fails to render payment. I also agree the record lacks documentation of the State making such a payment schedule. However, this does not absolve Powell from making good faith efforts to pay his fines, fees, and restitution. The duty to render the payments still rests on Powell, no matter how the State acts. "The duty to pay full restitution under the sentence remains with the offender or the offender's estate until full restitution is paid, whether or not the offender is under state supervision." Section 46-18-241(1), MCA. Powell acknowledged this duty himself when he rendered his single payment of restitution in January 2020, apparently without being issued a payment schedule or invoice from DOC. The Court's holding today risks infantilizing

25

defendants and requiring the State to helicopter parent a probationer who owes fines, fees, or restitution.

¶44     I urge DOC to implement the financial compliance documentation in triplicate that this Court now requires, and I urge the State to present the district courts with a much more thorough record of a probationer's violation when considering violations and elapsed time credit.  To be clear, those recommendations are for purposes of assisting defendants in fulfilling their financial obligations and providing district courts with a clear record of probationer compliance.  They are not conditions precedent to a probationer's duty to pay the fines, fees, or restitution ordered in the judgment and sentence.  I dissent today because I fear the Opinion has either established new and unnecessary precondition before payment obligations shall commence or, more likely, confused everyone as to what constitutes a violation of a financial conditions of a sentence.

/S/ CORY J. SWANSON